GOODBAR et al. v. UNION & PLANTERS' BANK & TRUST CO. et al.—67 S. W. (2d) 562.

Western Section. October 27, 1933.

Petition for Certiorari denied by Supreme Court, January 27, 1934.

356

Bates, Shea & Frazer, of Memphis, for appellants.
A. B. Knipmeyer, of Memphis, for appellees.

KETCHUM, J. This is a suit brought by the complainants to recover from the Union & Planters' Bank & Trust Company, and its successors in interest, the sum of $12,245.04 for the alleged misuse

or diversion of a trust fund. The amount sued for is a portion of the proceeds arising from the sale of a parcel of real estate on Peabody avenue, which had been conveyed to Mrs. Virginia Williams Goodbar, the mother of complainants, for life, with remainder to such issue as she might leave by her husband, James Bright Goodbar, but with power in her, by joint deed with her husband, to sell and convey said real estate and reinvest the proceeds of such sale in other real estate under the same limitations.

The defendants deny liability upon the ground that they were not charged with the duty of seeing to the reinvestment of the proceeds of said sale, and that they were not trustees of said fund, but held the same at all times subject to the order of Mrs. Virginia Williams Goodbar whenever she might desire to reinvest the same in the purchase of other real estate.

The complainants are the children of Mrs. Virginia Williams Goodbar and her husband, James Bright Goodbar, and bring this suit by virtue of that relationship, as remaindermen under said deed.

Their grandfather, J. M. Goodbar, on May 30, 1905, conveyed to Mrs. Virginia Williams Goodbar, wife of his son James Bright Goodbar, a house and lot on Central avenue, in Memphis, "for and during her natural life, with remainder at her death to such issue as she may have and leave by her present husband, James Bright Goodbar; but if she should die without leaving any issue of her marriage with James Bright Goodbar, then the remainder in fee shall go to said James Bright Goodbar, if he be living; and if he be not living, then it shall revert to James M. Goodbar, the grantor, or to his estate.

"The said Virginia Williams Goodbar is hereby expressly empowered, by joint deed with her husband, the said James Bright Goodbar, or if he be not living, by the written consent of the grantor, J. M. Goodbar, to sell and convey the land herein conveyed, and to reinvest the proceeds in other lands, to be held under the same limitations as are here imposed upon the land herein conveyed."

The Central avenue property was sold in March, 1918, and the proceeds of said sale were reinvested in a tract of land in Shelby county, and being a part of what is now known as the Duntreath farm, the title being taken in Virginia Williams Goodbar, for life, with remainder in fee to her children by her husband, James Bright Goodbar, and with the same power of sale for purposes of reinvestment in other real estate, and subject to the same conditions and limitations as were contained in said former deed; and in August, 1922, the Duntreath farm property was sold and the proceeds thereof were reinvested in the purchase of a house and lot on Peabody avenue, in Memphis, the title to which was likewise taken in the said Virginia Williams Goodbar, for life, with remainder in fee to her children by the said James Bright Goodbar, with the same power of sale for purposes of reinvestment in other real estate, and subject to the same

conditions and limitations as were contained in the original deed from the said J. M. Goodbar.

In the fall of 1923, the Peabody avenue property was sold to J. C. Harris. Harris applied to the title department of the Union & Planters' Bank & Trust Company, one of the defendants herein, for a title guaranty policy insuring him against loss on account of any defects in the title to said property. Before issuing said guaranty policy, the said Union & Planters' Bank & Trust Company had the title examined by one of its attorneys in its title department, Mr. Charles C. Gillespie. Mr. Gillespie, in the course of his examination, became aware of the provision in the deeds referred to, requiring the reinvestment of the proceeds of sale in other real estate, and one of his requirements for closing the deal, as shown in his report on the title, was that the bank should "see to the application of the proceeds of sale under terms of deed in Book 844, page 400;" and under date of November 16, 1923, he wrote to Mr. Fred Callahan, attorney for J. C. Harris, a letter, in which he quoted the provision of the grantors' deed with reference to the reinvestment of the proceeds of sale, and said, further:

"The purchaser is not relieved of seeing to the application of proceeds for reinvestment. Therefore, we should be satisfied that the purchase money paid by Mr. Harris is properly reinvested in real estate, title to which is taken under the same limitations as in said deed in Book 844, page 400, and pending such reinvestment, the proceeds of sale should be held in proper escrow for that purpose."

The sale to Harris was finally consummated on January 5, 1924, when the deed was delivered to him, and the Union & Planters' Bank & Trust Company, through its title department, issued to him its title guaranty policy No. 12589, for which he paid the usual premium; and the proceeds of said sale, in cash and notes, amounting to $34,000, were delivered to the Union & Planters' Bank & Trust Company, and held by it "in escrow," and carried on its books in an account styled "Title Guaranty No. 12589—J. C. Harris." There seems to have been no escrow agreement, but the money was held by the bank with the consent of Mr. W. D. Kyser, attorney for Mrs. Virginia Williams Goodbar, and the bank issued to him its receipts for said cash and notes. All the notes given for the deferred payments of purchase money were paid to the bank by February 10, 1928.

The bank required that the matter be handled in this way, in accordance with Gillespie's requirement as a condition to the issuance of the title policy to Harris. This appears from Gillespie's report to the bank on the title, and from his letter to Callahan, and from his testimony as well; and, while it was done with the consent of Mrs. Goodbar and her attorney, Mr. Kyser, the bank nevertheless, for its own protection and the protection of Harris, assumed the duty and obligation of seeing to the proper reinvestment of the fund in other

real estate, the title to which should be taken in Mrs. Virginia Williams Goodbar for life with remainder to her children by her husband, James Bright Goodbar, and upon the same conditions and limitations as are set out in the deed in Book 844, at page 400.

The said funds were never reinvested in the purchase of other real estate, but have remained continuously since January, 1924, in the possession and under the control of the said Union & Planters' Bank & Trust Company and its successor, the Union Planters' Bank & Trust Company, and its successor, the Union Planters' National Bank & Trust Company.

The interest derived from the purchase-money notes was paid, as collected, to Mrs. Virginia Williams Goodbar, the life tenant; and, to the end that the cash payment amounting to $8,338.37, and the principal of three of the deferred payment notes of $3,000 each might produce an income, the Union & Planters' Bank & Trust Company, at the instance of the said Virginia Williams Goodbar, issued its checks to S. M. Williamson & Co., investment bankers, as follows: On March 7, 1924, in the amount of $8,338.37; on January 16, 1925, in the amount of $3,000; on January 20, 1926, in the amount of $3,000; and on February 24, 1927, in the amount of $3,000—making a total amount of $17,338.37. For these checks the bank received either directly or through W. D. Kyser, attorney for Virginia Williams Goodbar, certificates of deposit issued by S. M. Williamson & Co., for said several amounts. These certificates are payable to the order of Virginia W. Goodbar and Union & Planters' Bank & Trust Company (as their interests may appear) on demand, on ten days' notice, with interest at 6 per cent per annum, interest payable monthly to Virginia W. Goodbar. All of said certificates were indorsed in blank by Virginia W. Goodbar and delivered to the Union & Planters' Bank & Trust Company. They were not indorsed by the bank. The certificate for $8,338.37 has a credit thereon of $5,093.33, under date of October 18, 1930, which represents the face value, plus accrued interest thereon, of certain bonds delivered by S. M. Williamson & Co. to the Union & Planters' Bank & Trust Company on October 18, 1930. The interest on said certificates of deposit was paid by S. M. Williamson & Co. directly to Mrs. Virginia Williams Goodbar. The amount here sued for, $12,245.04, represents the amount invested in these certificates, less this credit of $5,093.33.

S. M. Williamson & Co. was a corporation engaged in business as an investment banker, but was not authorized to receive deposits. On October 22, 1930, it filed a voluntary petition in bankruptcy and was adjudicated a bankrupt on the same date. By agreement of the parties to this suit, and without prejudice to their rights, a claim was filed against said bankrupt estate for $12,273.61, being the amount of these certificates plus accrued interest of $28.57; and one dividend of 8 per cent thereon, amounting to $981.89 has been paid. It is

expected that another dividend of approximately 10 per cent will be paid by said estate.

Complainants were minors when these certificates were purchased, and had no part in the purchase thereof. The complainant J. M. Goodbar became of age on September 3, 1930, and complainant Laura Goodbar Chamberlin became of age on August 12, 1927.

In 1923, and for many years prior thereto, the Union & Planters' Bank & Trust Company was engaged in the banking business, and had also a trust department and a title guaranty department. In February, 1929, the Union Planters' Bank & Trust Company was organized and succeeded to and had transferred to it all the assets and business of the Union & Planters' Bank & Trust Company, and assumed all of its indebtedness and liabilities on its title guaranty policies. On June 19, 1929, the Union Planters' National Bank & Trust Company obtained a charter under the acts of Congress relating to national banks, and succeeded to, and had transferred to it, all the assets of the Union Planters' Bank & Trust Company, and about the same time the Union Planters' Title Guaranty Company obtained a charter under the laws of Tennessee, and succeeded to the title guaranty business of the Union Planters' Bank & Trust Company. This was done because of legal restrictions against national banks engaging in the business of guaranteeing land titles. The Union Planters' National Bank & Trust Company owned the Union Planters' Title Guaranty Company in this way: the stock in the title guaranty company was owned by the Manhattan Savings Bank & Trust Company; and the stock in the Manhattan Savings Bank was owned by the Union Planters' National Bank & Trust Company.

On April 14, 1930, Mr. Kyser gave a receipt on the form of the Union & Planters' Bank & Trust Company's title guaranty department for said certificates of deposit ''in trust for rearrangement of securities, and to transfer escrow to Trust Department of the Union Planters' National Bank & Trust Company.'' These certificates were at that time in the possession of the Union Planters' Title Guaranty Company as the successor of the title department of the Union & Planters' Bank & Trust Company, and the receipt should have been made to it, but the blank form of receipt of the original company was used without changing the name.

On August 16, 1930, said certificates of deposit and a check of the Union Planters' Title Guaranty Company for $13,000 were delivered to the trust department of the Union Planters' National Bank & Trust Company, along with a letter of instructions signed by Mrs. Virginia Williams Goodbar. This transaction seems to have been for the purpose of withdrawing the cash and certificates from the title guaranty company and putting them in the trust department of the Union Planters' National Bank & Trust Company. The letter which Mrs. Goodbar signed was prepared by Judge Hughes, trust officer of the

Union Planters' National Bank & Trust Company, and Mr. Kyser, her attorney, and sent to her in California for her signature. Upon her return from California in September, 1930, she consulted her advisers, Mr. Kyser and Mr. Emmet Joyner, and they decided that it would be advisable to cash said certificates; and she and Mr. Joyner then went to see Judge Hughes and requested him to cash the certificates, or, if this could not be. done, to exchange them for good real estate notes. This was the last day of September or the first day of October, and Judge Hughes took the matter up with Williamson & Co., but was unable to cash them, but did succeed in getting a $5,000 bond, which with the accrued interest was credited on the certificate of $8,338.37.

As already stated, S. M. Williamson & Co. filed a voluntary petition in bankruptcy on October 22, 1930. It had been in trouble for some months. Mr. Williamson testifies: "Pressure on the institution commenced early in 1930, and continued with the general decline—the economical decline, and the pressure got stronger and stronger every day. It was quite hard to tell when it really became unable to meet its obligations. Some of them were met only a week or so before filing the petition." He states, however, that "if a firm demand for a settlement had been made in June we quite probably might have settled the matter, though not without considerable inconvenience to the concern." It is apparent that no amount of effort on the part of Judge Hughes would have resulted in the collection of these certificates after the 1st of October.

As already stated, the complainants were minors when the Williamson loan was made, and had no knowledge thereof; they were in no way represented; Mr. Kyser was their mother's attorney, but did not represent them. It was not Mrs. Goodbar's intention to make a permanent loan, but she did desire that some arrangement be made whereby the fund would be paying interest until such time as a desirable investment in real estate could be made; and upon the advice of Mr. Kyser and Mr. Joyner she consented to the Williamson loan.

The complainants did not learn of the nature of the Williamson loan until August or September, 1930, and they joined their mother in requesting the withdrawal of the funds from Williamson & Co.

The learned chancellor found as a fact and accordingly decreed that the Union & Planters' Bank & Trust Company, by undertaking to see to the application of the proceeds of the sale of the Peabody avenue property to Harris, and holding the same until they could be reinvested in the purchase of other real estate, the title to which should be taken in the manner and upon the same conditions and limitations set out in the deed of record in Book 844, at page 400, had made itself a trustee of said fund, and that by participating, as it did, in the loan of $17,338.37 thereof to S. M. Williamson & Co.

for a long period of time on its unsecured certificates of deposit, it had breached said trust, and was therefore liable for the consequent loss of $12,245.04, and that the Union Planters' Bank & Trust Company and the Union Planters' National Bank & Trust Company were also liable for said amount by reason of the fact that they had 'succeeded to all the property and assets of the Union & Planters' Bank & Trust Company and assumed all its liabilities.

 ██ From this decree the said defendants Union & Planters' Bank & Trust Company and Union Planters' National Bank & Trust Company have appealed to this court and assign errors. The first assignment of error is that the court erred in decreeing that any of the defendants were liable for failing to invest said funds:

(a) Because the Union & Planters' Bank & Trust Company was not on March 21, 1924, chargeable with notice of the limitations of any of said deeds; its only notice being the notice acquired by its attorney who examined the title in October, 1923, which attorney shortly thereafter severed his relations with the bank, and his report not coming to the attention of any officer of the bank.

The answer to this contention is that this attorney was one of the duly authorized examining attorneys in the bank's title department, and the knowledge he acquired in his examination of the title will be imputed to the bank. Moreover, Mr. Lindsay, another attorney of the bank who had before him Mr. Gillespie's report on the title, was also aware of the provisions of the deed recorded in Book 844, at page 400, and concurred in Gillespie's opinion that the bank should see to the proper application of the proceeds of the sale. This assignment will be overruled.

(b) Because neither of the defendants had any right to control the investment of said funds, but conceded that Mrs. Virginia Williams Goodbar, entitled to the use thereof for and during the term of her natural life, was entitled to demand said funds and hold the same for investment.

 The record does not bear out the statement of fact contained in this assignment; the bank did not concede the right to Mrs. Goodbar to demand and hold the funds, but insisted upon having control of same itself. It was unwilling to pay same over to her, but held control of same itself. At no time could Mrs. Goodbar have withdrawn any part of the principal of said fund, except for the purpose of reinvesting it in other real estate, and then under the supervision of the bank and subject to the same limitations set out in the deed in Book 844, page 400. This assignment will also be overruled.

(c) Because the investment of the funds in the Williamson certificates was made by Mrs. Virginia Williams Goodbar upon the advice of her attorney, Mr. Kyser, and of Mr. Emmet Joyner and Mr. Williamson, and the bank merely issued its checks as directed by them,

making no charge, claiming no interest, seeking no advantage to itself, but acting in the utmost good faith.

Having made itself a trustee for the purpose of seeing to the investment of the funds in the purchase of other real estate, upon the same terms and conditions set out in the 'deed in Book 844, at page 400, the bank cannot excuse itself of negligence in investing in the Williamson certificates in violation of the 'trust, by placing the blame upon Mrs. Goodbar, a cotrustee. It acquiesced in the purchase of the Williamson certificates, which were made payable to it and Mrs. Goodbar, as their interests might appear, and it at all times kept control of said certificates. Even for the short time they were in Mr. Kyser's hands, they were unindorsed by the bank, and Kyser had them in trust for a specific purpose. This assignment will be overruled.

(d) Because complainants knew they were interested in the fund, were willing for their mother to manage same as she pleased, would not have questioned her, and do not now blame her for having made the Williamson investments, but were glad the investments were made so as to produce a monthly income.

The complainants were minors when said loans were made, were ignorant of the entire transaction, were not represented by counsel, and repudiated the transaction as soon as the facts were brought to their attention. This assignment will be overruled.

(e) Because, on April 14, 1930, when Williamson & Co. was solvent, the certificates of deposit were withdrawn by W. D. Kyser, attorney for Mrs. Goodbar, and retained by him until August 16, 1930; during said time he might have collected same, and was considering real estate mortgage investments, a $5,000 mortgage having been taken, and a $12,500 mortgage having been set apart for them, but upon which the advisers upon whom Mrs. Goodbar and complainants relied had failed to investigate and pass.

This assignment is predicated upon a state of facts which did not exist. The certificates were withdrawn by Mr. Kyser on his trust receipt ''for rearrangement of securities and to transfer escrow to Trust Department of Union Planters' National Bank & Trust Company.'' Whether or not Mr. Kyser negotiated for the purchase of real estate mortgage notes does not appear; the negotiations with reference to the $5,000 note and the $12,500 note occurred after Judge Hughes made the demand, about October 1st. He got the $5,000 note, but Williamson could not tender him the $12,500 note because it was pledged to the Bank of Commerce & Trust Company, and he could not get it released. Williamson, Int. 51-52, transcript, pp. 175, 176.

This assignment must be overruled.

(f) Because the certificates of deposit were returned to the trust department of the Union Planters' National Bank & Trust Company; the trust officer's department having no information as to the source

of the funds, and being instructed to disburse funds or handle the investments as directed by W. D. Kyser.

■ ■ This assignment must also be overruled, because the trust department of the national bank was charged with notice that the certificates of deposit did not belong to Mrs. Virginia Williams Goodbar, because on their face they were payable to her and the Union & Planters' Bank & Trust Company, as their interests might appear. They were accompanied also by a check of the Union Planters' Title Guaranty Company for $13,000, which was a part of the same trust fund; and the letter of August 16th under which they were deposited with the trust department shows that said funds and securities might be withdrawn "conditioned only that the same be invested in real estate, the title to which shall be taken in me upon the same conditions and limitations as are set forth in two deeds of record in the Register's Office of Shelby County, Tennessee, in Record Book 685, page 379, and Record Book 844, page 400, etc." Any sort of investigation on the part of the trust officer of the bank would have disclosed fully the nature, character, and purpose of the trust. The national bank had acquired all the assets and assumed practically all the liabilities of the Union Planters' Bank & Trust Company, which had shortly before acquired all the assets and assumed all the liabilities of the Union & Planters' Bank & Trust Company. It was the owner of the Union Planters' Title Guaranty Company, a subsidiary company which had taken over the business of the title departments of the Union & Planters' Bank & Trust Company and the Union Planters' Bank & Trust Company. Under these facts the national bank must be held liable for the default of the Union & Planters' Bank & Trust Company.

■ The second assignment of error is that the court erred in holding that the investment of these funds in certificates of deposit of S. M. Williamson & Co. constituted a diversion of the fund, because Williamson & Co. were investment bankers of the highest repute with a long record of handling such matters capably and with fidelity.

The question here is not one of good faith on the part of the bank in making or permitting the investment. The bank assumed the responsibility of seeing to the reinvestment of the proceeds of the sale in the manner provided by the original deed; this it did not do, but instead it participated in the investment of more than $17,000 thereof in unsecured certificates of deposit of S. M. Williamson & Co., as the result of which this loss occurred.

This assignment must be overruled.

■ The third assignment of error is grounded upon the fact that Mrs. Virginia Williams Goodbar was not named as a defendant. The objection comes too late at this time. We do not think she was a necessary party, though she may have been a proper party. Had the

defendants deemed that she was a necessary party, they could have made her such by cross-bill.

Mr. Gibson in his work on Chancery Suits, at section 542, says:

"No objections because of non-joinder or misjoinder of parties, complainant or defendant, or because of multifariousness, can be made at the hearing, but the Court in such cases will decree upon the merits. If the defendant at the hearing object for want of parties, not having previously taken the objection by plea, answer, or demurrer, the court may render a decree saving the rights of the parties not before it; or grant leave to amend on terms not extending beyond the payment of costs. The jurisdiction of the court cannot be objected to at the hearing, if the defendant has answered; unless, indeed, the case be one wholly unfit to be determined in a Court of Equity."

Assignment overruled.

The fourth assignment is that the court erred in holding that either of the defendants was a trustee with respect to the funds in question, or answerable to any one other than Mrs. Virginia Williams Goodbar, as defendants were only agents without compensation or interest in the subject-matter.

The defendant Union & Planters' Bank & Trust Company, whether or not, as a matter of law, obligated to see to the proper reinvestment of the proceeds in the purchase of other real estate upon the same terms, conditions, and limitations as set out in the original deed, did undertake to do so, and held control of the funds for that purpose; and it thereby became a trustee obligated to see that the terms of the trust were carried out. The whole purpose of assuming control of the fund pending the reinvestment was to protect the remaindermen, and it is therefore answerable to them.

Assignment overruled.

The fifth assignment is that the court erred in holding the Union Planters' National Bank & Trust Company liable otherwise than for failing to follow the directions of the escrow agreement of August 16, 1930.

The question raised by this assignment has already been discussed. The national bank is liable for the loss sustained by reason of the breach of the trust by the Union & Planters' Bank & Trust Company, because it succeeded to all the assets and business of the latter and assumed all its liabilities.

This assignment will be overruled.

The sixth assignment goes to the action of the court in holding that either of the defendants intermeddled with the trust funds so as to prejudice the complainants.

By assuming control of the funds for the purpose of seeing to the proper reinvestment thereof, the defendant Union & Planters' Bank & Trust Company became a trustee obligated to see that the trust was

carried out for the benefit of all the parties in interest. The complainants are the ultimate beneficiaries of the trust, and were therefore prejudiced by the loss of a substantial part of the trust fund.

The seventh assignment is that the court erred in decreeing that the defendants be required to give complainants a receipt for the funds in question. This is the exact relief to which complainants are entitled. They are not entitled to recover the money lost, but are entitled to have the trust fund restored, and this is what the decree directs. The decree directs the banks to pay into the trust department of the Union & Planters' National Bank & Trust Company the sum of $12,245.04 to be reinvested in real estate under the terms of the original deed. The banks will be entitled to apply toward the payment of this sum the dividend of $981.89 heretofore received from the Williamson bankruptcy estate, and any future dividends that may be received from that source after the restoration of the fund, may be retained by the bank.

Assignment overruled.

The eighth and last assignment is that the court erred in holding any of the defendants liable otherwise than as provided in the escrow agreement of August 16, 1930. This matter has already been discussed, and for reasons there given the assignment will be overruled.

In conclusion, we are of opinion and hold that the Union & Planters' Bank & Trust Company, having taken control of this fund for the purpose of seeing to the proper reinvestment thereof under the terms of the original deed, became a trustee and liable to the parties in interest for the proper administration of the trust; that, knowing that such trust fund could be properly invested only in real estate, it permitted, acquiesced in, and actively participated in the diversion thereof, as the result of which this loss has been sustained. The said bank and its successor banks are therefore liable to the parties in interest for the losses sustained, as a result of the diversion. American Surety Co. v. Grace, 151 Tenn., 575, 271 S. W., 739; United States Fidelity & Guaranty Co. v. People's Bank, 127 Tenn., 720, 157 S. W., 414; Caulkins v. Gas-Light Co., 85 Tenn., 683, 4 S. W., 287, 4 Am. St. Rep., 786; Covington v. Anderson, 16 Lea (84 Tenn.), 310.

The decree of the chancery court will be affirmed, and the costs will be taxed against the appellants and their surety.

Senter and Anderson, JJ., concur.