Raymond SKINNER, Jr., and Charles H. Gabriel, Co-Executors of the Estate of Jane Ruth Skinner, Deceased, Plaintiffs,

v.

UNION PLANTERS NATIONAL BANK OF MEMPHIS, and Katherine Skinner, Tracy Skinner, Shannon Skinner and Margaret Skinner, and all other unknown and unborn minor beneficiaries, Defendants.

No. C–75–183.

United States District Court,
W. D. Tennessee, W. D.

April 7, 1978.

Eugene Greener, Jr., William L. Gibbons, Memphis, Tenn., for plaintiffs.

James W. McDonnell, Jr., Memphis, Tenn., for Union Planters National Bank.

. Larry B. Creson, Jr., Memphis, Tenn., guardian ad litem.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WELLFORD, District Judge.

This suit was filed by Jane Ruth Skinner against Union Planters National Bank (Union Planters) as trustee, alleging fraud, imprudence and breach of trust in the management of trust assets. The complaint seeks a judgment for income for her as life beneficiary which allegedly should have been earned and distributed, a restoration of trust corpus and removal of the trustee. The pleadings named as additional defendants four minor remainder beneficiaries (also successor income beneficiaries), asserting that these remaindermen refused to join the suit as plaintiff, felt the suit was against their interest, and sought no relief against the trustee.[1] The minor remaindermen, through their court appointed guardian ad litem, have not challenged this allegation throughout the litigation. Jurisdiction in this Court was originally based upon diversity of citizenship.

A motion to dismiss was filed by defendant seeking realignment of the minor remaindermen, as plaintiffs and dismissal for lack of diversity.[2] Realignment was refused because of the potential or apparent conflict between the plaintiff and the remaindermen, as pointed out specifically by plaintiffs' counsel, and the motion to dismiss was overruled.

Ms. Skinner died September 16, 1976, thereby fixing the period of her entitlement to the approximately 5¾ year period ending on the date of death. Under the terms of the trust, the minor defendants thereafter became entitled to the income and, upon the termination of the trust, the principal.

Following revival of the suit in the name of Ms. Skinner's personal representative, Union Planters filed a motion for summary judgment asserting that, in the years during which she was entitled to the income, the actual distributions greatly exceeded any amount which she could conceivably receive under the most favorable trust management. The motion asserted that, following her death, neither she nor her estate had any interest in the trust, there was no relief to which her estate was entitled, and the issues were moot. Supporting affidavits were filed. Following preliminary arguments, the Court scheduled an evidentiary hearing directing that evidence be produced by Union Planters to prove the amount of distributions made or properly charged to Ms. Skinner during her entitlement (January 1, 1971, to September 16, 1976) and that plaintiffs introduce their proof as to a reasonable return on the trust principal under its concept of prudent investment of trust assets during this period. During the three day hearing, the Court heard evidence from witnesses for Union Planters,[3] plaintiffs' accountant, and two investment specialists submitted by plaintiffs.

The trust in litigation was established and funded by Raymond Skinner to provide for his daughter during her lifetime with the remainder to grandchildren. For reasons not pertinent here, the trust instrument provided for the accumulation of income during the first five years. Commencing January 1, 1971, the income was to be distributed to Jane Ruth Skinner during her lifetime with authority in the trustee to encroach, if necessary, on principal to provide at least $9,000.00 per year. The trustee had additional authority, in its discre-

---

1. The second amended complaint alleged:

   "3. The four minor defendant REMAINDERMEN, take the position that the defendant, UNION PLANTERS, has performed acceptably and should not be removed as trustee . ."

   "4. The three minor defendant REMAINDERMEN did not want this lawsuit brought."

   "5. . . . . the defendant minor REMAINDERMEN feel that this entire lawsuit is contrary to their interests because of the poten-

   tial expenses and costs that may be incurred and charged against the Trust."

2. Subsequent to the filing of this motion, the complaint was amended seeking to allege federal question jurisdiction.

3. Following introduction of testimony from Bank personnel, the plaintiffs stipulated that Union Planters had, in fact, made the distributions which it alleged it had made to Jane Ruth Skinner.

tion, to encroach upon principal to meet expenses of Jane Ruth Skinner occasioned by "accident, illness, or otherwise."

The trust instrument gave the trustee broad investment authority contained in several pages of investment instructions. Among them were the requirement that the trustee invest in "good, sound income producing securities" and the specific authorization to invest in "Bank Common Trust Funds."

The original trust assets (consisting of approximately half municipal bonds and half common stocks) were retained substantially intact until 1970.[4] At that time, the trust income was less than $9,000.00 per year. With the necessity of commencing distributions to Jane Ruth Skinner in 1971, and realizing that the current income production may well have required immediate encroachment to meet the minimum annual payments, the trustee initiated asset conversions ultimately resulting in a trust portfolio consisting of about 50% in Union Planters Common Trust Fund B (B Fund), approximately 25% in Union Planters Common Trust Fund A[5] (A Fund) and 25% in a corporate note bearing 8¾% interest.

At the outset, distributions to Jane Ruth Skinner amounted to substantially more than the $9,000.00 originally contemplated (both to meet her living requirements[6] and to provide for her extraordinary medical expenses),[7] and substantial encroachments on corpus were made to meet these distribution requirements. Monthly distributions were made to Ms. Skinner from January, 1971, to the date of her death on September 16, 1976.

Over approximately 5¾ years, Ms. Skinner received $126,623.20 and an additional $7,638.09 was distributed for her benefit in the form of personal taxes, accounting fees and trustee's fees. At the hearing, Union Planters introduced proof to support the following disbursements:

| YEAR: | AMOUNT DISTRIBUTED TO JANE RUTH SKINNER: | TOTAL AMOUNT DISTRIBUTED: |
|---|---|---|
| 1971 | $ 11,772.62 | $ 14,000.77 |
| 1972 | 19,264.45 | 20,479.91 |
| 1973 | 18,055.19 | 19,463.66 |
| 1974 | 21,898.10 | 22,946.72 |
| 1975 | 25,836.21 | 26,854.42 |
| 1976 (thru 9/16) | 29,701.63 | 30,515.81 |
| TOTAL: | $126,623.20 | $134,261.29 |

Plaintiffs finally stipulated to these disbursements, although not at any preliminary stage.

The original Skinner trust portfolio was comprised of approximately 50% common stocks and 50% municipal bonds, the bonds producing a yield of about 3.6%. As originally constituted, the trust had an annual income of $6,881.00. In providing for encroachment to meet the minimum annual payment of $9,000.00, the settlor apparently contemplated that the trust investments might not produce an income of that amount. On January 1, 1971, the portfolio had a market value of $196,412.02.

Plaintiffs do not challenge the management of the trust prior to 1970. In 1970, however, most of the original assets were sold and re-invested in Union Planters' B Fund, A Fund and a corporate note which produced an aggregate annual income in excess of $9,000.00. Plaintiffs complained of this sale, but it is noted that since half of the assets produced only about $3,600.00, a virtually impossible burden would have been imposed upon the trustee to invest the remaining funds in assets producing sufficient income to raise the total income to an amount in excess of $9,000.00 had there been no conversion of assets.

4. Some income was invested in Union Planters Common Trust Fund B (B Fund) as early as 1968.

5. Common Trust Fund A was later divided into Common Fund A–E (Equity Fund) and Common Fund A–I (Income Fund).

6. Ms. Skinner resided in New York City all of her adult life with no regular employment. Distributions of $1,000.00 per month were made in 1971 and at Ms. Skinner's insistence the trustee exercised its discretion to increase this to $1,400.00 per month in 1972, which continued until her death.

7. Prior to 1971, Ms. Skinner developed cancer which required treatment throughout the period in question and which ultimately proved fatal.

To support their claim for relief, the plaintiffs produced a comparative analysis of the trust fund, comparing the actual return with plaintiffs' theoretical return. Both of plaintiffs' investment witnesses explained that the "theoretical" return contained in this analysis was the amount which the trust fund should have produced had it been invested in a manner which they considered appropriate under the trust instrument. In addition, they testified that under their concept of the required investment management, the fund should have produced a return equivalent to the return produced by the Dow Jones Industrial Average, the Standard & Poor's 500 or a savings account. Even under the views of plaintiffs' witnesses, a theoretical return of some $55,000 from January 1, 1971, through June 30, 1977,[8] should have been produced, compared to some $53,500 which the fund actually produced. The "theoretical" revenue of plaintiffs' experts was thus computed without allowing for *any encroachments*, but it, nevertheless, exceeded actual revenue (after allowing for encroachments) by less than $2,000 during the applicable period.[9] It is clear from plaintiffs' own proof that even under a "theoretical" investments approach, encroachments exceeding $80,000 would have been required to meet the $126,263.00 amount which was actually distributed. Plaintiffs principally objected at trial to investment in a growth type fund rather than an income fund. Even if the trust assets had been invested, moreover, in the most favorable of the three indices used by plaintiffs' witnesses,[10] in every year substantial encroachments would have been required in order to fund the disbursements actually made. While the propriety of the disbursements made to Ms. Skinner is not germane to this decision, these disbursements were made in line with actual demands from Ms. Skinner and her prior counsel[11] with the realization that encroachments were necessary to bring them about.

■ Accordingly, the Court concludes that under the most favorable view of the plaintiffs' proof, Ms. Skinner, during the period of her entitlement, received distributions substantially in excess of any amount which this trust fund could reasonably have been expected to earn, or would have earned had original assets been retained. Since the only right she ever had was the right to the income during her life, even if this suit were successfully prosecuted, she would not be entitled to any relief because any award would, of necessity, go to corpus to restore encroachments. Because the plaintiff has no claim for personal relief, Union Planters' motion for summary judgment should be granted.

The plaintiff contends, however, that as life income beneficiary only, she has standing to maintain a suit against the trustee for restoration of corpus even though she no longer has any right to income. In support of this position she relies principally on two cases, *Lynch v. Porter*, 446 F.2d 225 (8th Cir. 1971) and *Goodbar v. Union Planters National Bank & Trust Co.*, 17 Tenn. App. 355, 67 S.W.2d 562 (1933).

■ These cases are distinguishable and not determinative of the issue here because the plaintiff in both these cases was a remainderman, or had remainder interests. A remainderman would have standing to seek restoration of corpus and would be entitled to seek this relief, sought here by plaintiff, either in an independent suit or

---

8. This is nine months *after* the death of Jane Ruth Skinner but was the cut-off date used by plaintiffs.

9. This was the maximum difference computed by plaintiffs, though in their "theoretical" computation, cash was assumed to be invested at prime, a rate which even the plaintiffs' own witness considered unrealistic. Despite repeated inquiries from the Court, the plaintiffs were never able to prove to the Court any specific damage which the plaintiffs could recover even if they were successful in convincing the Court that the fund was mismanaged.

10. Dow Jones Industrial Average, Standard & Poor's 500 and savings account interest.

11. Ms. Skinner, at various times during this interval, was represented by Messrs. Ballon, Vorder Bruegge and Donelson, all members of the Memphis Bar.

when suing jointly with a life tenant. *Goodbar* and *Lynch* stand only for the proposition that remaindermen may bring such a suit. In this case the estate of Ms. Skinner received more than double the income she was required to receive and is not entitled to seek relief which would only benefit the remaindermen. The minor remaindermen who were named as defendants may have brought suit seeking such relief, but not plaintiffs. This is particularly so where the remaindermen have disclaimed any desire to prosecute this claim and where plaintiff has proceeded on the theory that Jane Ruth Skinner's interests are so diverse and antagonistic to those of the remaindermen that she should proceed without their intervention.[12] The Court should confine its decision to an actual controversy. Since Jane Ruth Skinner's estate is not entitled to any money judgment and cannot assert any "distinct and palpable injury to himself," plaintiff lacks standing, and there is no justiciable case or controversy before the Court. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The death of Ms. Skinner ended any interest, however speculative or potential, she may have had in the diminution of corpus.

The motion of Union Planters for summary judgment is accordingly granted and the motion of plaintiff for summary judgment is denied.

The Court is not here making a determination whether the trust assets were or were not administered prudently, nor is the Court making any determination concerning any rights the minor remaindermen may have, if any.

The costs of this case are assessed against the plaintiffs.

---

12. If the remaindermen were seeking any relief and were realigned as plaintiffs, this Court would not have diversity jurisdiction.