**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0005n.06
Filed: January 4, 2007

**No. 06-5012**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, as Trustee, | ) ) ) | |
| **Plaintiff-Appellant,** | ) ) | **ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE |
| v. | ) ) | DISTRICT OF TENNESSEE |
| FIFTH THIRD BANK, N.A., | ) ) | **O P I N I O N** |
| **Defendant-Appellee.** | ) ) | |

**BEFORE: NORRIS, COLE, and COOK, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** This diversity action involves a dispute between two banks: Franklin National Bank ("FNB")[1] and JPMorgan Chase Bank, National Association ("Chase"). Each bank made loans to Michael E. Redick, who sought funding for his new business, Fan-A-Mania Sports, Inc. Unfortunately for all involved, the business did not thrive. Because both banks hold a deed of trust securing the loans with the same piece of real property, we must decide which takes priority.

The district court determined that the deed of trust held by FNB, which was recorded first, took priority because it included a provision for future obligatory advances and, pursuant to Tennessee law, was not released even though the outstanding balance on the promissory note secured

---

[1] FNB has since merged with Fifth Third Bank, N.A., which is named as defendant in this action.

by FNB's deed of trust was paid in full at the time Redick entered into a subsequent deed of trust with Chase. Accordingly, it granted summary judgment to FNB. Because we conclude that the deed of trust held by FNB provided for optional rather than obligatory advances and that FNB had "actual notice" of Chase's intervening deed of trust at the time that it authorized further advances or loans to Redick, we vacate the judgment of the district court and remand this matter with instructions that Fifth Third release the deed of trust secured by the disputed property.

## I.

It would be an understatement to say that this case illustrates how not to enter into commercial transactions. At virtually every turn, representatives of both parties made business decisions based upon an incomplete understanding of the factual and legal landscape, failed to follow up when confronted by information that should have raised concerns, and generally proceeded based upon assumptions that proved to be misguided. However, because our holding is grounded on the language of the deeds of trust and their accompanying promissory notes rather than upon the circumstances surrounding their negotiation, a lengthy factual recitation is unnecessary. As always, we review grants of summary judgment *de novo*. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 619 (6th Cir. 2006).

Redick founded Fan-A-Mania, which sold sports-related items, in January 2002. On March 5, 2002, he signed a "Deed of Trust for Commercial Purposes" in favor of FNB as beneficiary with John T. Flaugher serving as trustee. It was recorded in Williamson County two days later. The deed of trust explicitly states that it "SECURES OBLIGATORY ADVANCES MADE FOR COMMERCIAL PURPOSES"; this statement is underscored in the following paragraph:

      12. **Future Advances.** Upon request of Borrower(s), Lender, prior to release of this Deed of Trust, may make future advances to Borrower(s) . . . up to the original amount of the Note or the maximum amount secured hereby, whichever is greater. Such future advances, with interest thereon, shall be secured by this Deed of Trust unless the parties shall agree otherwise in writing.

The deed of trust also adopted the definition of "obligatory advances" found in Tenn. Code Ann. § 47-28-101. As collateral, Redick offered his unencumbered home at 227 Lancelot Lane in Franklin, Tennessee.

In addition to the deed of trust, Redick signed a related promissory note in the amount of $125,000 that was a "working capital line of credit for seasonal business." It provided for interest-only payments beginning on April 5, 2002 and a final payment of the entire amount of principal plus accrued interest by March 5, 2003. Redick borrowed the entire $125,000 for inventory.

Redick had assured the FNB loan officer who approved the loan that the note would be paid off by a private loan from his brother. However, his brother did not follow through and therefore Redick decided to sell his house for $280,000 and use part of the proceeds to repay FNB the outstanding balance of $125,000.

On the day his house was due to sell, the buyer backed out. However, Redick had already signed a contract to buy another house at 202 Golden Leaf Court in Franklin. His mortgage broker arranged financing for him through Franklin Mortgage Funding, Inc.[2] On April 15, 2002, Redick closed at Serenity Title & Escrow LLC ("Serenity Title") on three loans: two secured by 227 Lancelot and one secured by 202 Golden Leaf. The latter is not at issue in this appeal.

---

[2] Despite similar names, Franklin Mortgage and FNB are in no way affiliated.

Redick signed two adjustable rate promissory notes and two deeds of trust in favor of Franklin Mortgage. The first note was made in the amount of $218,400, and was secured by a deed of trust recorded on April 22, 2002. The second note was for $54,600 and was secured by the second deed of trust, which was likewise recorded. The deed of trust securing the $218,400 loan was assigned to Chase and sent to its servicing company. The loan for $54,600 was assigned to Popular Financial Services LLC, which is not affiliated with Chase. Thus, this appeal only concerns the priority between the deed of trust held by FNB and the deed of trust in the amount of $218,400 held by Chase, which was recorded approximately a month later.

Kimberly Parker, who worked for Serenity Title, served as the closing agent for Franklin Mortgage. Franklin Mortgage instructed her to satisfy the $125,000 balance due on the deed of trust held by FNB and to obtain a release from FNB so that Franklin Mortgage would be in the first lien position with respect to the Lancelot property. Parker duly called FNB and learned that the payoff amount was $125,998.06. The next day, April 16, FNB faxed Parker a written payoff statement. The box on the form indicating that the loan was a line of credit was not checked. Based on this information, Serenity Title sent a check to FNB for $125,998.06, which was stapled to the written payoff statement. Hence, at this point, Franklin Mortgage believed that its deed of trust constituted the first lien against the Lancelot property.

In May 2002, Redick approached FNB for additional funds. A lending officer's report dated May 10 identified inventory and equipment owned by Fan-A-Mania as collateral for a new $50,000 loan, which Redick received on May 24. The report made no mention of the deed of trust, however. Once approved, Redick signed another promissory note with terms similar to the March 5, 2002

note.

On August 6, 2002, Redick requested another loan, this time in the amount of $100,000. FNB consolidated this loan with the $50,000 loan of May 24. The loan officer's report identified the collateral as $216,985 in inventory and equipment. Uncertain about the status of the deed of trust on the Lancelot property, the FNB loan officer and her supervisor spoke to trustee John Flauger. According to the loan officer's report, they then decided to secure the new loan with a second deed of trust in "an abundance of caution."

Attorney David McMackin handled the August 19 closing on the $100,000 loan. A title search that he requested on the Lancelot property continued to show FNB's March 5, 2002 deed of trust as a first lien and Franklin Mortgage's two mortgages as second and third liens. However, McMackin mistakenly believed that FNB and Franklin Mortgage were the same entity.

Regardless, FNB ultimately loaned $100,000 to Fan-A-Mania. A new deed of trust in favor of FNB was recorded and noted that the property was encumbered by the current year's real estate taxes and "a first mortgage" to Franklin Mortgage in the principal sum of $218,400. The title insurance policy excepted from coverage Franklin Mortgage's first and second deeds of trust.

On May 29, 2003, Chase's substitute trustee under the first Franklin Mortgage deed of trust advised FNB – which it assumed to be a junior lienholder under its August deed of trust – of the bank's intent to foreclose. At this point, counsel for FNB informed Chase that it held a prior deed of trust.

On July 15, 2003, Fan-A-Mania filed a Chapter 7 bankruptcy petition. At this time, approximately $50,000 remained on the debt to FNB, which obtained emergency relief from the

automatic stay to foreclose under the March 2002 deed of trust.

Chase responded with a civil action in Tennessee Chancery Court against FNB. After summary judgment motions were denied, Chase voluntarily dismissed that action in January 2005. Later that month it initiated this suit in federal court. The district court granted summary judgment in favor of Fifth Third Bank, which had merged with FNB. The court reasoned as follows:

> FNB's recorded March 5, 2002 Deed of Trust extended a line of credit for future advances to Redick for commercial purposes under these [Tennessee] statutes. FNB and Redick agreed, and intended, in both the dragnet clause[3] and in paragraph 23 of the Deed of Trust that all advances made by FNB were "obligatory advances" under the statutes cited above. . . .
>
> Under Tenn. Code Ann. § 47-28-101(6), FNB could, and did, require Redick to pay off the first $125,000 advance before FNB made a second advance of $50,000 in May 2002. FNB could, and did, rely on the March 2002 Deed of Trust to secure the May 2002 advance because § 47-28-102 states a commercial mortgage can be used to secure future advances "even though no indebtedness is outstanding at the time any advance is made." When FNB made the second $50,000 advance in May 2002, Redick had no outstanding indebtedness to FNB, yet the March 5, 2002 Deed of Trust had not been released and secured the $50,000 advance. Likewise, under statute, FNB could advance $100,000 to Redick in August 2002, and still be secured by the March 2002 Deed of Trust.

*JP Morgan Chase, Nat'l Assn. V. Fifth Third Bank, N.A.,* No. 3:05-0079, slip op. at 23-24 (M.D. Tenn. Nov. 1, 2005) (footnote and citations omitted). The district court subsequently denied Chase's motion to alter or amend judgment.

**II.**

---

[3] "[A] dragnet clause is a mortgage provision which purports to make the real estate security for other, usually unspecified, debts which the mortgagor may already owe or may owe in the future to the mortgagee." *Commerce Fed. Sav. Bank v. Fed. Deposit Ins. Corp.*, 872 F.2d 1240, 1242 n.2 (6th Cir. 1989) (quoting G. Osborne, G. Nelson, D. Whitman, *Real Estate Finance Law* § 12.8 at 772 (1st ed. 1979)).

While the district court correctly notes that the deed of trust held by FNB unequivocally states that it "secures obligatory advances made for commercial purposes," a reading of the entire document leads us to conclude that it contemplates optional, not obligatory, advances. Obligatory advances are defined by statute as follows:

> "Obligatory advance" means an advance which the creditor is required to make by agreement with the borrower, whether or not a subsequent event beyond the control of the creditor may allow the creditor to cancel the obligation to make such advance. Advances shall be deemed obligatory, even though made pursuant to a credit agreement or mortgage containing some or all of the following provisions:
>
> > (A) The right of the creditor to withhold advances on the occurrence of a default until the default is cured, if such default is curable under the terms of the agreement;
> >
> > (B) The inclusion of a stated or objectively ascertainable date on which the obligation to make further advances ends;
> >
> > (C) Requirements for procedures to be followed by the borrower to activate the obligation to make advances;
> >
> > (D) In the case of an open-end mortgage, the right of the creditor, on notice to the borrower, to reduce the credit limit, or to withhold advances, because of a decrease in the value of the collateral or an adverse change in the borrower's credit worthiness; and
> >
> > (E) In the case of an open-end mortgage, the right of the creditor, on notice to the borrower, to cancel the obligation to make further advances thereunder on grounds stated in the open-end credit agreement or mortgage . . . .

Tenn. Code Ann. § 47-28-101(a)(6). "Optional advances" are defined simply as "any advance which is not obligatory." Tenn. Code Ann. § 47-28-101(a)(9).

Because the balance owing on the March 2002 promissory note had been paid off at the time Chase recorded its deed of trust, the following statutory provision is of importance:

> A mortgage may provide that it secures not only existing indebtednesses or advances made contemporaneously with the execution thereof, but also future advances, whether obligatory, or optional, or both, and whether made under open-end credit agreements or otherwise, to the same extent as if such future advances were made contemporaneously with the execution of the mortgage, even though no advance is made at the time of the execution of the mortgage and even though no indebtedness is outstanding at the time any advance is made.

Tenn. Code Ann. § 47-28-102. Moreover, "advances relate back to the time of the recording of the mortgage [deed of trust], and are prior and superior to subsequent encumbrances and conveyances" if they are obligatory. Tenn. Code Ann. § 47-28-103(a). When advances are optional, however, a slightly different analysis determines priority:

> Optional advances made under any mortgage securing future advances, other than an open-end mortgage, are superior in priority to any intervening conveyance or encumbrance unless the mortgagee has actual notice of the intervening conveyance or encumbrance prior to exercising the mortgagee's option to make the advance. For the purpose of this subsection, "actual notice" means knowledge in fact from any source by any means.

Tenn. Code Ann. § 47-28-103(c).

With this statutory scheme in mind, we turn to the language contained in the March deed of trust and the related promissory note in order to determine whether the advances contemplated are obligatory or optional. We begin by observing that the mere fact that the deed of trust states that it "secures obligatory advances made for commercial purposes" does not necessarily end our inquiry if the underlying terms of the deed and note, which is incorporated by reference, are at odds with that characterization.

The promissory note is styled a "Commercial Variable Rate Revolving or Draw Note," which is described as follows:

> REVOLVING OR DRAW FEATURE:  X   This Note possesses a revolving feature. Upon satisfaction of the conditions set forth in this Note, Borrower shall be entitled to borrow up to the full principal amount of the Note and to repay and reborrow from time to time during the term of this Note.      This Note possesses a draw feature. Upon satisfaction of the conditions set forth in this Note, Borrower shall be entitled to draw one or more times under this Note.  Any repayment may not be reborrowed. The aggregate amount of such draws shall not exceed the full principal amount of this Note.

The note signed by Redick checked the revolving feature, which would appear to be consistent with FNB's position that any advances were obligatory since it provides that the borrower is "entitled" to advances against the full principal amount of the loan.  However, the revolving feature is further defined by the following condition:

> CONDITIONS FOR ADVANCES:  If no Event of Default has occurred under this Note, Borrower shall be entitled to borrow monies under this Note (subject to the limitations described above) under the following conditions:

> OFFICER APPROVAL ON EACH DRAW REQUEST

The condition that future advances on the note require officer approval obviously undercuts the notion that such advances are obligatory since the borrower is only entitled to advances contingent upon approval by a bank representative.  Also, as quoted earlier, the paragraph in the deed of trust defining future advances contains the following sentence: "Upon request of Borrower(s), Lender, prior to release of this Deed of Trust, *may* make future advances to Borrower(s) . . . up to the original amount of the Note or the maximum amount secured hereby, whichever is greater."  The use of "may" rather than "shall" in this context further supports the view that any advances are optional rather than obligatory.  Further, the use of "may" is certainly at odds with the statutory definition of obligatory advances, which defines the term as "an advance which the creditor *is required* to make

- 9 -

by agreement with the borrower, whether or not a subsequent event beyond the control of the creditor may allow the creditor to cancel the obligation to make such advance." Tenn. Code Ann. § 47-28-101(a)(6) (emphasis added). Admittedly, the deed of trust's final paragraph states that "[t]he Borrower(s) and the Lender acknowledge that advances under the Note, and any extensions or renewals thereof, are Obligatory Advances." However, as always, the specific governs the general, and if advances are contingent upon bank approval, they are not obligatory. *See generally* 11 Williston on Contracts § 32:10 (4th ed.).

Having concluded that the advances at issue are optional, the priority of the March deed of trust hinges on whether FNB had "actual notice of the intervening conveyance or encumbrance prior to exercising the mortgagee's option to make the advance." Tenn. Code Ann. § 47-28-103(c). In other words, when it advanced Redick additional funds in August,[4] did the bank have actual notice of the deed of trust held by Chase? We conclude that it did. Attorney McMackin's title search, undertaken on behalf of FNB, revealed the two Franklin Mortgage deeds of trust and he made marginal entries indicating as much. Under fundamental agency principles, knowledge acquired by an attorney may be imputed to his client. *Winstead v. First Tennessee Bank, N.A., Memphis*, 709 S.W.2d 627, 631-32 (Tenn. App. 1986) (citing *Goodbar v. Union & Planters' Bank & Trust Co.*, 67 S.W.2d 562 (Tenn. App. 1933)). In this instance, McMackin learned of intervening encumbrances on the real property at issue and that knowledge may fairly be imputed to FNB.

In sum, we conclude that the March deed of trust and the related promissory note, despite

---

[4] We focus exclusively on the August loan because the May loan of $50,000 was paid off as part of the August loan.

statements to the contrary, clearly provide for optional advances inasmuch as they are contingent on the approval of an FNB officer. Furthermore, FNB had actual notice of the deed of trust now held by Chase at the time it made the August loan to Redick. Under these circumstances, the deed of trust held by Chase has a priority interest in the Lancelot real property.

## III.

The judgment of the district court is **reversed** and the cause **remanded** with instructions that Fifth Third release its March 2002 deed of trust.