Jerry **WINSTEAD** and Nancy Winstead, **Plaintiffs-Appellees,**

v.

**FIRST TENNESSEE BANK N.A., MEMPHIS, Raymond Clift, Cecil D. Smith, and the Firm of Griffin, Clift, Burns, Smith & Chinn, A Partnership, Defendants,**

**Geraldine Page, Geraldine Page, Inc., a Tennessee Corporation, Margurette Bridger, and Betty Jones, Defendants-Appellants.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Jan. 31, 1986.

Permission to Appeal Denied by Supreme Court April 28, 1986.

Terry C. Cox and Wanda B. Shea, Memphis, Manire & Clifton, for plaintiffs-appellees.

Albert T. McRae, Memphis, Wilson, McRae, Ivy, Sevier, McTyier & Strain, for defendants, Raymond Clift and the Firm of Griffin, Clift, Burns, Smith & Chinn.

Crawford McDonald, Memphis, McDonald, Kuhn, Smith, Miller & Tait, for defendants-appellants, Geraldine Page & Geraldine Page, Inc., A Tennessee Corp.

Michael C. Williams, Memphis, Evans, Petree, Cobb & Edwards, P.A., for defendant-appellant, Margurette Bridger.

Henry M. Beaty, Jr., Memphis, for defendant-appellant, Betty Jones.

HIGHERS, Judge.

This case involves a real estate transaction in which the following parties are involved: *

Mr. and Mrs. Jerry Winstead are the plaintiffs-purchasers of the subject property.

Geraldine Page is a real estate agent with Geraldine Page, Inc., who represented the Winsteads in their purchase of the realty.

Betty Jones and Margurette Bridger are owners of the subject property. Mrs. Jones is also a real estate agent, but did not act as agent in the transaction out of which this action grows.

Raymond Clift and the firm of Griffin, Clift, Burns, Smith and Chinn represented the Winsteads at the closing for the purchase of the property.

Robert Pinstein and the firm of Harkavy, Shainberg, Kosten, and Pinstein represented the seller, Mrs. Bridger, at the closing.

All the foregoing defendants were sued for "fraudulently and negligently representing that the subject property could be used for commercial purposes," except for Clift and the law firm who were sued for negligent misrepresentation.

First Tennessee Bank N.A. Memphis was named as a nominal defendant because it held the first mortgage on the subject property.

The facts are as follows:

The Winsteads were owners and operators of an appliance business and they were in the market for a new location for their business. They conferred with Geraldine Page who informed them of the property at 2925 South Perkins Road in Memphis. Some sixty days earlier Page had sought to sell the property to a client for a professional office, but the sale failed. The property was residential in character and it was surrounded by residential development, although there were businesses located on the three other corners opposite the site. Mrs. Page produced a letter for the Winsteads dated July 5, 1983, from Ron L. Morris of the City of Memphis, which stated:

This is to verify that the above referenced property is zoned C–L, Local Commercial and this zoning allows an office use.

In late August or early September of 1983, the Winsteads consulted with Cecil Smith, an attorney, to verify whether the property could be used for their appliance business. On September 20, Smith transmitted a letter to the Winsteads which he had received from Ron L. Morris, stating:

This is to verify that the referenced property is zoned C–L, Local Commercial. The C–L zoning permits a retail appliance business along with appliance repair on the premises. No outside storage of appliances is permitted.

There is no indication that Smith considered subdivision restrictions or that he checked anything other than zoning.

The Winsteads offered a contract to the sellers on September 6, 1983, which involved a contingency that the buyers would be able to obtain a 90% loan on or before

---

* The parties will generally be referred to by their last names, and references to individuals will

also include their firms or businesses, if parties.

October 28, 1983. This contract failed because the contingency was not met.

On December 19, 1983, a second contract was offered by the Winsteads to purchase the property for $85,000.00, but also providing that the buyers would assume the first mortgage, that they would secure $20,000.00 to close, and that Bridger would finance the balance with Jones transferring her interest in the property to Bridger. This proposal, which was accepted, also contained the following provisions:

Title is to be conveyed subject to all restrictions, easements and covenants of record, and subject to zoning ordinances or laws of governmental authority.

The closing occurred on January 24, 1984. Robert Pinstein appeared at the closing on behalf of Bridger, and Raymond Clift, a partner of Cecil Smith, was present for the Winsteads. At the time of the closing, the Winsteads paid $20,000.00, gave a deed of trust, and received a warranty deed signed by both Bridger and Jones which recited that the property was "unencumbered, except for ... subdivision restrictions ..." among other things. A note was given by the Winsteads for the balance owed to Bridger, and Bridger and Jones, in turn, gave an "Owner's Affidavit" which stated that there was no outstanding encumbrance affecting the property except, among other things, "subdivision restrictions."

Shortly after the closing, the Winsteads began to make some modifications to the exterior of the property. They received a telephone call from a neighbor, followed by a letter, advising them that the property could not be used for commercial purposes because such use was forbidden by subdivision restrictions running with the land.

There are in fact subdivision restrictions on record which affect the subject property, among them the following:

If parties violate or attempt to violate any of the covenants herein, it shall be lawful for any person owning real property in said subdivision to prosecute at law or in equity against violating person or persons and either to prevent him or them from so doing or to recover damages or other dues for such violation ...

All lots in the tract shall be known as residential lots.

No structure shall be erected, altered, placed, or permitted to remain on any residential building plot other than a one or two family dwelling, not to exceed two stories in height and a private garage for not more than two cars and any outbuilding incidental to the residential use of the lot.

The record showed that there had been protracted litigation regarding the subject property in previous years and that injunction had issued against any use of the property other than residential. At one time there had been a suit filed to remove the subdivision restrictions, to which James C. Bridger (Mrs. Bridger's deceased husband) and Betty Jones had been parties, wherein both the trial court and this Court had denied relief.

There is considerable conflict concerning what was said at the closing and by whom. The trial court found implicitly that the Winsteads were not informed until after the closing that the property could not be used for commercial purposes. The defendants contended at trial that the Winsteads were informed of this problem either before or during the closing. The trial court did find, however, that Pinstein, the attorney for Bridger, did disclose to Clift, the attorney for the Winsteads, the existence and effect of the subdivision restrictions. Pinstein testified that Clift followed him from the room at one point during the closing, and inquired about the repercussions of the subdivision restrictions, and Pinstein replied that "it was the subdivision restrictions that were going to have to govern."

The trial court found, in regard to Pinstein, that "he wasn't silent, he told their representatives." The action as to Pinstein was dismissed at the conclusion of the proof in the case. The Winsteads filed a notice of appeal with reference to the dismissal of Pinstein and his law firm; how-

ever, the notice was subsequently dismissed by consent order.

As to the other matters before the trial court, there was a finding filed in the cause holding that Jones, Bridger, Page, and Clift "did over-reach and practice a fraud upon the plaintiffs, by their failure to provide them with the fact they could not use the property for the purpose for which they proposed to buy same." The court ordered that the sale be rescinded, that the promissory note to Bridger be set aside, and that a money judgment be entered against Jones, Bridger, Page, and Clift for the $20,-000.00 down payment, and for all other costs and expenses incurred in connection with the transaction, along with interest from the date of filing the suit. The court further found that punitive damages were not warranted.

After certain post-trial motions were filed and heard, an amended judgment was entered with reference to the money judgment so that Jones, Bridger, Page, and Clift were ordered to pay $5,049.49 plus interest, Jones and Bridger were ordered to pay $21,408.38 plus interest, and Clift was ordered to pay an additional $150.00, representing his attorney fee charged in connection with the closing. The difference in the amended judgment and the original judgment had to do primarily with the fact that Page and Clift did not receive any benefit from the down payment made to Bridger and Jones and, therefore, were not charged with this item of damages. All motions for new trial were overruled, and the defendants duly filed notices of appeal. The notice of appeal on behalf of Clift and the law firm was subsequently dismissed by consent order.

■ Fraud, when made fully to appear, vitiates all contracts into which it enters. *Hunt v. Walker*, 483 S.W.2d 732 (Tenn.App.1971). On the other hand, if a purchaser of real property has notice or with ordinary diligence should have had notice of a problem with the real estate, the purchaser cannot attack the validity of the contract for fraud, misrepresentation, or concealment of that problem.

In *Pakrul v. Barnes*, 631 S.W.2d 436 (Tenn.App.1981), the Court held that the vendee of real estate, who brought suit against the vendor and his real estate agents to rescind the purchase of real estate based on misrepresentations as to parking facilities and the zoning of the property, was not entitled to rescission of the contract. The vendee desired to use the property for commercial purposes. Prior to the sale of the real estate, the vendee contacted the owner and was told that the property could not be used commercially. The owner's real estate agents indicated to the vendee that the property could be used for commercial purposes, and the vendee proceeded with the purchase and the closing. A provision was inserted in the offer that the purchase was conditional on proper zoning for business use. The Court held that this provision was for the benefit of purchasers and "was subject to their waiver." 631 S.W.2d at 438.

In the case at hand, the information regarding the subdivision restrictions was available and accessible to all parties and particularly to the Winsteads in this instance in that they were represented by an attorney who examined the entire title file prior to the closing. Clift testified that he examined the title file before the closing and that he saw the papers relating to lawsuits concerning the use of the property. He stated, "I made a note that I wanted to find out about those things when we got to the closing, I wanted to raise those issues." Clift had not only reviewed the title file, but he also discussed the matter on more than one occasion with Pinstein. There was testimony to the effect that these matters were discussed at the closing, but it is disputed whether the Winsteads were told directly of the effect of the subdivision restrictions. It is apparent that the trial court found they were not. The evidence does not preponderate against this finding.

■ The question, therefore, arises whether the Winsteads were chargeable with the information imparted to their at-

torney. First, it is to be noted that the purchasers of real property are:

> [c]hargeable with notice, by implication, of every fact affecting the title which would be discovered by an examination of the deed or other muniments of title of his vendor, and of every fact as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted. If there is sufficient contained in any deed or record, which a prudent person ought to examine, to produce an inquiry in the mind of an intelligent person, he is chargeable with knowledge or notice of the fact so contained. *Hall v. Hall*, 604 S.W.2d 851 (Tenn.1980). See also *Teague v. Sowder*, 121 Tenn. 132, 114 S.W. 484 (1908).

Further, notice in these circumstances to the attorney is notice to the clients. This principle was set forth in *Goodbar v. Union & Planters' Bank & Trust Co.*, 67 S.W.2d 562 (Tenn.App.1933), wherein the Court stated:

> From this decree the said defendants Union & Planters' Bank & Trust Company and Union Planters' National Bank & Trust Company have appealed to this court and assign errors. The first assignment of error is that the court erred in decreeing that any of the defendants were liable for failing to invest said funds:
>
> (a) Because the Union & Planters' Bank & Trust Company was not on March 21, 1924, chargeable with notice of the limitations of any of said deeds; its only notice being the notice acquired by its attorney who examined the title in October, 1923, which attorney shortly thereafter severed his relations with the bank, and his report not coming to the attention of any officer of the bank.
>
> The answer to this contention is that this attorney was one of the duly authorized examining attorneys in the bank's title department, and the knowledge he acquired in his examination of the title will be imputed to the bank. Moreover, Mr. Lindsay, another attorney of the bank who had before him Mr. Gillespie's

report on the title, was also aware of the provisions of the deed recorded in Book 844, at page 400, and concurred in Gillespie's opinion that the bank should see to the proper application of the proceeds of the sale. This assignment will be overruled. 67 S.W.2d at 565.

In *Roberts v. State*, 546 S.W.2d 264, 265 (Tenn.Cr.App.1976), the Court said: "A client is implied to have notice of facts transmitted to his attorney in the matter and course of his employment for such client." In *Moody v. Moody*, 681 S.W.2d 545, 546 (Tenn.1984), the Court held: "Counsel's knowledge must be attributed to his client, if the actions of the court are to have any efficacy." The rule is succinctly stated in 7A C.J.S. *Attorney and Client* § 182:

> As otherwise stated, a person generally is held to know what his attorney knows and should communicate to him, and the fact that the attorney has not actually communicated his knowledge to the client is immaterial. So, the facts constituting knowledge, or want of it, on the part of an attorney, are proper subjects of proof, and are to be ascertained by testimony as in other cases; but when ascertained, the constructive notice thereof to the client is conclusive, and cannot be rebutted by showing that the attorney did not in fact impart the information so acquired.

The rule with reference to attorney and client is also applicable in cases involving real property. *Thompson on Real Property*, Vol. 8, § 4328 (1963), sets forth the following:

> An elementary principle of the law of agency, applying also to attorneys, is that loyalty to the principal's interests requires an agent to disclose every material fact concerning the subject matter of the agency that comes within his knowledge and memory, in the course of his agency. The law, following the inference of fact, conclusively presumes the agent to have performed this duty of informing his principal, and the latter is therefore affected with knowledge of all

the material facts of acting in the course of his employment and within the scope of his authority. These principles of agency have been repeatedly applied to purchasers of realty, affected by notice to their agents and attorneys.

▉ We believe that once the knowledge of the attorney is attributed to the Winsteads in this case in accordance with the foregoing principles, it must be presumed in law that they had the same knowledge and information which was available to all other parties to the transaction. This rule may seem harsh in its application, but it is necessary for the orderly conduct of business and for the stability of orders and decrees issuing from the courts. If a party is harmed by the negligent failure of his attorney to disclose material facts in a matter associated with his representation, the party has an action against the attorney for the harm.

▉ If one who is in possession of all material facts, either actually or constructively, proceeds with a purchase of realty, notwithstanding such knowledge, such a person cannot thereafter recover on the basis of fraud, misrepresentation, or concealment of the information to which all parties had equal access. In *Pakrul v. Barnes, supra,* the Court quoted the following language with approval from 91 C.J.S. *Vendor and Purchaser* § 68, at 945–6:

> [W]here the means of information are at hand and equally accessible to both parties so that, with ordinary prudence or diligence, they might rely on their own judgment, generally they must be presumed to have done so, or, if they have not informed themselves, they must abide the consequences of their own inattention and carelessness. Unless the representations are such as are calculated to lull the suspicions of a careful man into a complete reliance thereon, it is commonly held, in the absence of special circumstances, that, where the means of knowledge are readily available, and the vendor or purchaser, as the case may be, has the opportunity by investigation or inspection to discover the truth with respect to matters concealed or misrepresented, without prevention or hindrance by the other party, of which opportunity he is or should be aware, and where he nevertheless fails to exercise that opportunity and to discover the truth, he cannot thereafter assail the validity of the contract for fraud, misrepresentation or concealment with respect to matters which should have been ascertained, particularly where the sources of information are furnished and attention directed to them, as, for example, where the source of accurate information is indicated or referred to in the contract.

▉ When Pinstein, representing Bridger, divulged information to Clift, representing the Winsteads, regarding the subdivision restrictions, it was the equivalent of Bridger herself disclosing this information. The trial court erred in not dismissing the claim against Bridger when Pinstein was dismissed as a defendant.

▉ Jones was not in the position of a seller at the time of the closing. Although she did sign the warranty deed, along with Bridger, she was not a signatory to the real estate contract because the transaction was contingent upon her conveying her interest to Bridger who would, in turn, provide financing and sell to the purchasers. Although Pinstein represented Bridger at the closing, his disclosure to Clift was knowledge to the purchasers as to all who had an interest in the property.

▉ Page was the real estate agent for the Winsteads. There was proof that when the matter of restrictions arose for discussion, Page, in an apparent reference to the *zoning* clearance, said: "That's been taken care of, that matter has been taken care of." Mrs. Page testified that she did not know at the time of the closing of the subdivision restrictions or that there was any reason why the property could not be used for business purposes, but she was of the opinion that the prior problems had been resolved by commercial zoning of the property. Although it is apparent that

Page was anxious to close the sale and that she may not have fully served the interests of her clients in this transaction, the fact remains that the Winsteads had an attorney who was fully informed not only by Pinstein but by his own examination of the title file, and the exclamations of Page under these circumstances do not rise to the level of fraud, misrepresentation, or concealment. See, e.g., *Scott v. Wilson*, 15 Ill.App.2d 456, 146 N.E.2d 397 (1957), cited in *Pakrul v. Barnes, supra.*

Although Clift filed a notice of appeal herein, the notice was dismissed by consent order and Clift filed a brief as an appellee seeking to have the amended judgment upheld. In its original finding the trial court held that Clift "did over-reach and practice a fraud upon the plaintiffs," but the amended finding stated that he "was guilty of negligent misrepresentation by his failure to provide the plaintiffs with the fact they could not use the property for the purpose for which they proposed to buy same." As a result of this negligence as found by the trial court, the Winsteads have suffered harm. This matter is remanded to the trial court for a finding of damages proximately caused by the negligence of Clift.

The decree for rescission is reversed. The money judgments against Jones, Bridger, and Page are reversed and set aside. Costs are adjudged against Clift and the law firm.

TOMLIN, J., and McLEMORE, Special Judge, concur.