IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 19, 2005 Session

## URSULA DANIELS v. GEORGE BASCH, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 02-903-III     Ellen Hobbs Lyle, Chancellor**

**No. M2004-01844-COA-R3-CV - Filed October 27, 2005**

Purchaser of a residence filed a suit against sellers and real estate agent for rescission of the contract and damages, claiming that Defendants engaged in misrepresentation by suppressing or concealing the existence of a TVA easement along the backside of the property. The Davidson County Chancery Court granted Defendants summary judgment and Plaintiff appealed. The judgment of the trial court is affirmed in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Lawrence D. Wilson, Nashville, Tennessee, for the appellant, Ursula Daniels.

Derrick C. Smith, Nashville, Tennessee, for the appellees, George Basch and ReMax Elite.

Judy A. Oxford, Franklin, Tennessee, for the appellees, Brett Wickham and Susan Wickham.

**OPINION**

On December 5, 2001, Ursula Daniels ("Daniels") closed on the purchase of a residence owned by Brent and Susan Wickham ("the Wickhams") through their Re/Max Elite real estate agent, George Basch ("Basch"). In December 2002, approximately one year after the closing on the purchase of the residence, Tennessee Valley Authority ("TVA") representatives advised Daniels that she could not plant trees or anything else along the backside of the property as TVA had an easement that included thirty feet of Daniels' backyard. Evidently, TVA had at some point procured an easement from the Wickhams and later on January 9, 2002, TVA had repurchased the easement from Daniels for $1900.00.

On March 22, 2002, Daniels filed a Complaint in Davidson County Chancery Court against the Wickhams, Basch, and Re/Max Elite, seeking rescission of the purchase of the residence as well

as money damages. Daniels claimed that Defendants engaged in misrepresentation by concealment for allegedly concealing or suppressing the TVA easement.

Daniels asserted that while viewing the house prior to closing on November 21, 2001, she remarked to Mrs. Wickham that she intended to plant trees in the backyard and Mrs. Wickham assured her that she did not think that doing so would pose a problem, but that Daniels should check with the Homeowners Association first. Daniels also claimed that she specifically inquired as to whether the TVA power lines and towers located in the backyard posed any problems and Mrs. Wickham allegedly replied that they did not.

Also, on October 22, 2001, the Wickhams executed a Tennessee Residential Property Disclosure Form which asked the Wickhams whether they knew of any encroachments, easements, or similar items that may effect ownership interest in the property. The Wickhams answered "No." Daniels further argued that on November 22, 2001, she specifically described her plans to plant trees in the backyard in the presence of Mr. Basch, and Mr. Basch allegedly made a sound that Daniels interpreted as acknowledging her remarks.

After closing, Mr. Basch came to the property to remove a shed that was on the TVA easement. Mr. Basch then proceeded to tell Daniels that TVA was powerful and had been known to come through its easements for the purpose of cutting down trees and removing or tearing down structures.

In reliance on the above stated facts, Daniels claimed that both the Wickhams and their real estate agent, Basch, had knowledge of the TVA easement prior to the closing and had misrepresented or concealed that fact. Daniels asserted that she relied upon Defendants' representations that she would be able to plant trees in the backyard and had she known of the TVA easement and its effect, she would not have purchased the property.

Basch and his employer, Re/Max Elite, filed a Motion for Summary Judgment on April 28, 2004. The Chancery Court granted Basch and Re/Max Elite's Motion on June 21, 2004, finding that Daniels had no claim against Defendants regarding the Tennessee Residential Property Disclosure Form because Defendants disclaimed any representation regarding said disclosure and because Daniels' version of the facts, as a matter of law, were not specific enough to rise to the level of a misrepresentation.

On May 12, 2004, the Wickhams filed their own Motion for Partial Summary Judgment with regard to the easement issue. The Chancery Court entered an Order granting the Wickhams' Motion on June 11, 2004, finding that because Daniels had a drawing at the time of closing which disclosed the easement, as a matter of law, it was not reasonable or justifiable for Daniels to rely on the statements of the Wickhams with regard to the easement issue. Daniels dismissed her remaining claims against the Wickhams on June 21, 2004 and filed a timely appeal against all Defendants.

Daniels asserts two issues on appeal. First, Daniels claims that the trial court erred in granting the Wickhams summary judgment because the trial court based its summary judgment determination solely on the reasonableness of Daniels' reliance on the Wickhams' assertions and the

parties' states of mind, which Daniels claims are issues left to the fact finder and thus an improper ground for summary judgment. Next, Daniels contends that the trial court erred in granting Basch and his employer, Re/Max Elite, summary judgment because the Tennessee Residential Property Disclosure was ineffective to disclaim Defendants' misrepresentations since Defendants knew that the disclosure incorrectly asserted that there were no easements. Daniels also claims that she presented sufficient evidence to establish that Defendants engaged in misrepresentation by concealment.

The standard of review on a motion for summary judgment is well settled. A trial court's decision regarding a motion for summary judgment is a question of law and as such, the Court reviews the record *de novo* with no presumption of correctness below to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn.2004). Tennessee Rules of Civil Procedure Rule 56 provides that summary judgment is appropriate when there is no genuine issue of material fact relevant to the defense contained in the motion, and the moving party is entitled to judgment as a matter of law on the undisputed facts. *Blair*, 130 S.W.3d at 763.

Daniels first claims that the trial court erred in granting the Wickhams' Motion for Partial Summary Judgment based solely upon on the reasonableness of Daniels' reliance on Defendants' assertions and the parties' states of mind. However, it appears from the trial court's Order that the court granted the motion based upon the fact that Daniels received a drawing at the time of closing which disclosed the easement. The trial court specifically stated in its Order,

> After hearing the statements of counsel, and considering the record herein, the Court found that the Motion for Partial Summary Judgment should be granted. More specifically, the Court found that the plaintiff had a survey or drawing at the time of closing which disclosed the easement, and that as a matter of law it was not reasonable or justifiable for the plaintiff to rely on the statements of the defendants with respect to the easement issue.

Daniels based her claim against the Wickhams on the theory of misrepresentation by concealment, which requires a plaintiff to prove the following elements: (1) the defendant concealed or misrepresentated a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to deceive the plaintiff; (4) the plaintiff was not aware of the fact and would have acted differently if the plaintiff knew of the concealed or suppressed fact; and, (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. T.P.I. 3 - CIVIL 8.38; *Lonning v. Jim Walter Homes, Inc.,* 725 S.W.2d 682, 685 (Tenn.Ct.App.1986).

In the sale of real property, a fact or condition is "material" if it is one of "controlling importance in determining the desirability and value of th[e] residence." *Patel v. Bayliff,* 121 S.W.3d 347, 353 (Tenn.Ct.App.2003) (quoting *Simmons v. Evans,* 206 S.W.2d 295, 296 (Tenn.1947)). The defendant has a duty to disclose such a fact or condition "unless ordinary diligence would have revealed the undisclosed fact." *Lonning v. Jim Walter Homes, Inc.,* 725 S.W.2d 682, 685 (citing *Simmons,* 206 S.W.2d at 296). Thus, there is no duty to disclose a material fact or condition if it was

apparent through "common observation" or if it would have been discoverable through the exercise of ordinary diligence. *Simmons,* 206 S.W.2d at 296; *Patel,* 121 S.W.3d at 353.

Clearly an easement is a material fact as it effects the desirability and value of the residential property. However, the Wickhams had no duty to disclose the easement in this case because the easement was apparent through "common observation." The TVA wires ran across the entire backside of the property and it is clear that Daniels noticed the wires because she inquired about them on at least two occasions. Furthermore, Daniels commissioned a mortgage loan inspection survey prior to closing which clearly designated the size and the location of the easement. Daniels failed to offer any facts or evidence to show that it was reasonable for her to continue to rely on the Wickhams' alleged misrepresentations rather than the survey or her own observations, which plainly showed the existence of an easement at the back of the property.

Plaintiff moved into the house December 1, 2001, four days before she actually closed the transaction to purchase the house. She was well aware of the TVA easement and the power lines above the easement as early as November 21, 2001. She testified:

> A.      Generalities, you know, how is the community? She said it was a quiet community. She was away from all the noise in the back there, whatever that meant. I was concerned about the back there, the power lines going across. I said, are you having any problems with that? She said no.
>
> Q.      Well, when did you see those power lines? When was the first time you saw them?
>
> A.      I believe it was after the contract was signed. We had made some amendments to the contract on the 22nd.
>
> Q.      Well, let me ask you that again. When was the first time that you knew there were power lines back behind this property?
>
> A.      On the 21st.
>
> Q.      The 21st of what month?
>
> A.      Of November of 2001.
>
> Q.      Why did you not see those when you were out there on November 19th or 18th, whatever.
>
> A.      I wasn't paying attention. I was not paying attention. I was so happy to find something.
>
> Q.      But I thought you asked Ms. Wickham about – –

A.		On the 21st I did. I did not see those power lines before. Didn't pay any attention to them. That's when I asked her about you have any problems with those huge towers and the power lines? She said no.

. . .

Q.		On November the 21st when you signed this contract, is that when you're telling us that you first became aware of some power lines at the house?

A.		I don't remember the dates. I'm telling you, I don't remember was it the 21st or 22nd or even 23rd.

Q.		You don't remember whether it was before or after you signed the contract, do you?

A.		I didn't pay attention to it. I'm sorry.

Q.		But at some point in time you're telling me you realized there were power lines back there; is that right?

A.		Yes.

Q.		Is that because you saw it on your own?

A.		Yes.

Q.		So it would have been at some point when you were out at the house?

A.		Yes.

Q.		Did you, upon seeing the power lines, inquire about that?

A.		Yes.

Q.		Who did you inquire of?

A.		Ms. Wickham.

Q.		And what did Ms. Wickham say?

A.		She said it was no problem.

Q.		What did you ask about it?

A.                I asked, I noticed those huge towers over there. Do you have any problems with those or the line coming across? She said no.

Q.                And that was the extent of your question?

A.                Yeah. Maybe I went on a little bit about static electricity for the children and so forth and so on, you know. But basically I had a question whether or not she had a problem. She said no she didn't.

Q.                So that was the extent of your question, about whether she had a problem with it?

A.                Basically. As best as I recall it.

Q.                And your concern was the static, the electricity may be coming from it?

A.                Was part of my question.

Q.                And was there any other part of your question?

A.                Whether or not she had problems.

Q.                What did she say?

A.                No. She had no problems.

The photographs exhibited to her deposition disclose that the TVA power lines and the towers supporting those lines are indeed "huge" and plainly visible. The survey drawing delivered to Plaintiff prior to closing clearly discloses a "50' TVA easement" traversing the rear of the property.

It is well settled that if a purchaser of real property has notice or with ordinary diligence should have had notice of a problem with the real estate, the purchaser cannot attack the validity of the contract for fraud, misrepresentation, or concealment of that problem. *Winstead v. First Tennessee Bank N.A., Memphis*, 709 S.W.2d 627, 631 (Tenn.Ct.App.1986). The Western Section of this Court further explained,

> If one who is in possession of all material facts, either actually or constructively, proceeds with a purchase of realty, notwithstanding such knowledge, such a person cannot thereafter recover on the basis of fraud, misrepresentation, or concealment of the information to which all parties had equal access. In *Pakrul v. Barnes, supra,* the Court quoted the following language with approval from 91 C.J.S. *Vendor and Purchaser* § 68, at 945-6:

[W]here the means of information are at hand and equally accessible to both parties so that, with ordinary prudence or diligence, they might rely on their own judgment, generally they must be presumed to have done so, or, if they have not informed themselves, they must abide the consequences of their own inattention and carelessness. Unless the representations are such as are calculated to lull the suspicions of a careful man into a complete reliance thereon, it is commonly held, in the absence of special circumstances, that, where the means of knowledge are readily available, and the vendor or purchaser, as the case may be, has the opportunity by investigation or inspection to discover the truth with respect to matters concealed or misrepresented, without prevention or hindrance by the other party, of which opportunity he is or should be aware, and where he nevertheless fails to exercise that opportunity and to discover the truth, he cannot thereafter assail the validity of the contract for fraud, misrepresentation or concealment with respect to matters which should have been ascertained, particularly where the sources of information are furnished and attention directed to them, as, for example, where the source of accurate information is indicated or referred to in the contract.

*Winstead*, 709 S.W.2d at 633.

Because Daniels knew of the power lines before she closed the transaction and had a survey revealing the existence of the easement prior to closing, she cannot now be permitted to assail the validity of the contract on the basis of misrepresentation. Daniels was in possession of all material facts regarding the easement and she chose to disregard those facts and continue with the sale. As this Court has held:

Where information is reasonably discovered, and here where the plaintiff was invited to inquire, it cannot claim reasonable reliance upon a misrepresentation. In *Solomon v. First American National Bank of Nashville*, 774 S.W.2d 935 (Tenn.Ct.App.1989), this Court stated, "[g]enerally, a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within his reach."

*Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 123 (Tenn.Ct.App.2001).

Daniels next claims that the trial court erred in granting Basch and Re/Max Elite summary judgment because the Tennessee Residential Property Disclosure was ineffective to disclaim any misrepresentations of Defendants since Defendants knew that the disclosure incorrectly asserted that there were no easements. Daniels also claims that there was sufficient evidence presented to the trial court to show that Basch and Re/Max Elite engaged in misrepresentation by concealment.

The Tennessee Act pertaining to conveyances of property provides that the representations contained in a Residential Property Disclosure statement are those of the owner and are not the representations of the real estate agent. Tennessee Code Annotated Section 66-5-202 provides:

> With regard to transfers described in § 66-5-201, the owner of the residential property shall furnish to a purchaser one of the following:
>
> (1) A residential property disclosure statement in the form provided in this part regarding the condition of the property, including any material defects known to the owner. Such disclosure form may be as included in this part and must include all items listed on the disclosure form required pursuant to this part. The disclosure form shall contain a notice to prospective purchasers and owners that the prospective purchaser and the owner may wish to obtain professional advice or inspections of the property. *The disclosure form shall also contain a notice to purchasers that the information contained in the disclosure are the representations of the owner and are not the representations of the real estate licensee or sales person, if any.* The owner shall not be required to undertake or provide any independent investigation or inspection of the property in order to make the disclosures required by this part.

Tenn.Code Ann. § 66-5-202 (emphasis added).

Tennessee Code Annotated section 66-5-206 further provides that a real estate licensee representing an owner of residential real property is not liable to any party unless he fails to inform the owner of his rights or duties, intentionally misrepresents or defrauds a purchaser, or fails to disclose "adverse facts" which the licensee has actual knowledge. Tennessee Code Annotated section 66-5-206 states:

> A real estate licensee representing an owner of residential real property as the listing broker has a duty to inform each such owner represented by that licensee of the owner's rights and obligations under this part. A real estate licensee representing a purchaser of residential real property or, if the purchaser is not represented by a licensee, the real estate licensee representing an owner of residential real estate and dealing with the purchaser has a duty to inform each such purchaser of the purchaser's rights and obligations under this part. If a real estate licensee performs those duties, the licensee shall have no further duties to the parties to a residential real estate transaction under this part, and shall not be liable to any party to a residential real estate transaction for a violation of this part or for any failure to disclose any information regarding any real property subject to this part. However, a cause of action for damages or equitable remedies may be brought against a real estate licensee for intentionally misrepresenting or defrauding a purchaser. A real estate licensee will further be subject to a cause of action for damages or equitable relief for failing to disclose adverse facts of which the licensee has actual knowledge or notice. "Adverse facts" means conditions or occurrences generally recognized by

competent licensees that significantly reduce the structural integrity of improvements to real property, or present a significant health risk to occupants of the property.

Tenn.Code Ann. § 66-5-206.

Therefore, as long as Basch and Re/Max Elite did not intentionally misrepresent or defraud Daniels or fail to disclose any adverse facts of which Defendants had actual knowledge, then they effectively disclaimed any representation in the Tennessee Residential Property Disclosure.

We have already determined that Daniels is precluded from recovering under the theories of misrepresentation or fraud because Daniels had notice of the easement prior to closing through her own observations as well as through the mortgage loan inspection survey. *See Winstead*, 709 S.W.2d at 631-633.

The Court need not reach the issue of whether Daniels provided sufficient facts to establish that Basch and Re/Max Elite engaged in misrepresentation by concealment because Daniels is precluded from recovery under that theory as a result of her knowledge of the TVA easement prior to closing. The judgment of the trial court is affirmed in all respects. Costs of appeal are assessed against Appellant.

_____
WILLIAM B. CAIN, JUDGE