# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 19, 2013 Session

## SPENCER D. LAND ET AL. v. JOHN L. DIXON ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 08C906      W. Jeffrey Hollingsworth, Judge**

---

### No. E2012-02341-COA-R3-CV-FILED-NOVEMBER 25, 2013

---

The plaintiffs – purchasers of a tract of land at auction – brought this action alleging professional negligence in the conduct of the auction, misrepresentation, and violation of the Tennessee Consumer Protection Act ("the TCPA"). The trial court dismissed the complaint, finding that it failed to state a claim upon which relief could be granted. On plaintiffs' first appeal, we affirmed the dismissal of the misrepresentation and TCPA claims. *Land v. Dixon*, No. E2004-03019-COA-R3-CV, 2005 WL 1618743 (Tenn. Ct. App. E.S., filed July 12, 2005) ("*Land I*"). We vacated the dismissal of the claim for professional negligence, and remanded the case for trial of that issue. After remand, the trial court granted the defendants' motion for partial summary judgment and their subsequent motion in limine, holding that plaintiffs were precluded, under our holding in *Land I*, from presenting evidence of the defendants' alleged misrepresentations as an aspect of their professional negligence claim. The jury returned a verdict for the defendants on the professional negligence claim. In this second appeal, we hold the trial court did not err in its ruling excluding evidence of misrepresentations and in limiting the negligence claim of the plaintiffs to the conduct of the defendants in their capacity as auctioneers. We further find no prejudicial error in the trial court's jury charge regarding comparative fault and auctioneer discretion. We affirm the trial court's judgment based on the jury verdict.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Everett L. Hixson, Jr., Phillip E. Fleenor, and Adam U. Holland, Chattanooga, Tennessee, for the appellants, Spencer D. Land and Action Building and Development, LLC.

James T. Williams and Zachary H. Greene, Chattanooga, Tennessee, for the appellees, John

L. Dixon, John Dixon and Associates, Inc., and Henry B. Glascock dba The Henry B. Glascock Company.

## OPINION

### I.

Our opinion in ***Land I*** provides the following pertinent factual and procedural background:

> The Plaintiffs, Spencer D. Land and Action Building and Development, LLC, filed their complaint in this action on June 15, 2004. The facts as set forth in the Plaintiffs' complaint are as follows.
>
> On or about April 17, 2004, the Defendants, John L. Dixon, Henry Glascock, John L. Dixon & Associates, Inc., and The Glascock Company d/b/a The Henry B. Glascock Company, conducted an absolute auction of approximately 448 acres of real property, located near Soddy Daisy, Hamilton County, Tennessee. Mr. Dixon and Mr. Glascock each personally held an ownership interest in the property at the time of the auction; however, neither of them disclosed their ownership interest to Plaintiffs before or during the auction.
>
> Prior to attending the auction and bidding on the property, Mr. Land obtained a brochure advertising the property. The brochure contained an aerial photograph of the property with lines added to indicate its borders. The photograph indicated that the property included approximately two acres in a shape that juts out from the main shape of the property. But this two-acre tract, described in the complaint as "prime property," was not included in the property conveyed at the auction.
>
> The brochure stated in large lettering: "Selling by Order of Trustee Robert L. Brown." But there was no "Order" of the Trustee requiring a sale. The Trustee sold the property at the choice of the beneficial owners, including the Defendants, and then utilized himself as closing attorney, his business as title

insurer, and two beneficiaries of the Trust as auctioneer and real estate broker.

Before the April 17, 2004 auction began, the Defendants announced the auction would be conducted according to the "two-minute rule." This rule means that once the auctioneers determine that too much time had passed between bids, that the auctioneer would announce the start of a two minute period. Once the start of this two minute period is called, if no new bid is submitted within the two minute period, then the gavel goes down and the last person submitting a bid prior to the start of the two minute period is the purchaser of the property.

*Land I*, 2005 WL 1618743 at *1. In *Land I*, we observed that plaintiffs' first complaint made the following further allegations:

When the auction reached a bid at or about $1,400,000.00, Mr. Land was the high bidder.

Following Mr. Land's $1,400,000.00 bid, Mr. Glascock, who was already in communication with Mr. Louis Card via telephone, attempted to convince Mr. Card to submit a bid higher than the bid of Mr. Land. Earlier in the auction, bids had been submitted on Mr. Card's behalf.

While Mr. Glascock was on the telephone with Mr. Card, Mr. Dixon announced the start of the two minute rule. After this announcement, more than two minutes elapsed. Witnesses to the auction informed the Defendants that more than two minutes had passed. The Defendants announced the end of the two minute period but did not conclude the auction. No bid was submitted from any other party during the two minutes higher than that of Mr. Land.

Despite the passage of time, Defendants continued with the auction, in violation of the announced rules of the auction, and eventually Mr. Card submitted a higher bid. In order to acquire the property, it was necessary for Mr. Land to follow Mr. Card's bid with a still higher bid.

Despite having already won the auction when the two minutes passed, Mr. Land was declared the winner of the auction by the Defendants when Mr. Land submitted a bid of $1,590,000.00. At this time, Mr. Land was required to sign Defendants' form contract for the purchase of the property.

Defendants charged a buyer's premium of ten percent (10%) of the auction price.

Plaintiffs reasonably relied upon the Defendants' knowledge, expertise and professional skill as licensed auctioneers and real estate brokers to properly and forthrightly conduct the auction and the sale of the real estate in a professional, competent and lawful manner.

On the same day of the auction, April 17, 2004, the parties executed a real estate sales contract which listed the purchase price as $1,749,000 ($1,590,000 plus buyer's premium of $159,000). The contract recites that "Purchaser [Plaintiff] has paid to Auctioneer the sum of $349,800 as earnest money ..." It is signed by Mr. Land, Robert L. Brown, President of Legal Title and Escrow, Inc. (holder of legal title to the property and the seller), and Mr. Dixon as auctioneer.

After the auction, the property was surveyed and the sales price was adjusted downward based on the actual acreage. As a result, the sales price was reduced to $1,501,327.29, and the buyer's premium was reduced to $150,132.73, for a total sales price of $1,651,460.02.

The Plaintiffs allege that as a direct and proximate result of the Defendants' actions and violations of applicable standards of care, Plaintiffs "paid $286,627.29 too much for the property" and "$26,862.73 too much as the buyer's premium for the property."

The Plaintiffs filed their lawsuit at 3:18 PM on June 15, 2004. It is undisputed that very shortly (within an hour) after the complaint was filed, the parties closed on the contract of sale of the real estate and thereby completed the sale.

On August 10, 2004, the Defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

*Id.*, 2005 WL 1618743 at \*1-2.

As previously noted, the trial court granted the motion and dismissed the plaintiffs' action. In **Land I**, we affirmed the dismissal of the misrepresentation and TCPA claims, vacated the dismissal of the claim for professional negligence, and remanded the case for trial of a single issue – whether "[d]efendants, by announcing the two-minute rule and not following it in an attempt to solicit a higher bid by another bidder, violated the applicable standard of care for auctioneers and real estate brokers." *Id.* at \*5. Following remand to the trial court, plaintiffs' first complaint was dismissed without prejudice for failure to prosecute. They filed a second complaint on July 25, 2008. Plaintiffs' second complaint contained the same allegations of misrepresentation, albeit repackaged in an attempt to place them under the rubric of the plaintiffs' professional negligence claim, which states as follows:

Defendants violated the standards by which reasonable real estate brokers handle real estate sales, including sales via auction, including but not limited to violations of *T.C.A. § 62-13-101, et seq.* and *Tenn. R. and Regs. 1260.2.01, et seq.* Such violations include, but are not limited to: (a) failure of the Defendants to disclose their personal ownership interest in the property in a timely manner; (b) misleadingly describing the property being sold; (c) misrepresenting the circumstances under which the property was being placed for auction; and, (d) failing to deal with Plaintiffs forthrightly and honestly as to the issue of the portion of the property which is affected by the proposed hiking trail.

(Italics in original.)

Defendants filed a motion for partial summary judgment "to the extent that [plaintiffs'] cause of action is based on [d]efendants' alleged misrepresentations, failure to disclose their prior ownership interests in the property prior to the auction, and failure to tape-record the entire auction." Defendants also filed two motions in limine that are at issue on this appeal. In the first motion, defendants asked the trial court for an order "excluding from trial any testimony, evidence, or argument that [d]efendants misleadingly described the property, misrepresented the ownership of the property, misrepresented the circumstances under which the property was being auctioned, and misrepresented the status of a portion of

the property affected by a proposed hiking trail." In the second motion, they requested an order "excluding from trial any testimony or other evidence pertaining to the standard of care for real estate brokers or [d]efendants' conduct as real estate brokers." The trial court granted the motion for partial summary judgment and both motions in limine.

The case was tried before a jury on June 13, 14, and 15, 2012. After the close of proof, the trial court instructed the jury regarding comparative fault. The trial court also instructed the jury that "[p]rofessionals, such as auctioneers, are allowed reasonable discretion in the performance of their duties." The jury found that defendants were not at fault. The trial court entered a judgment for defendants in accordance with the jury verdict. Plaintiffs timely filed a notice of appeal.

## II.

Plaintiffs have raised the following issues:

> 1. Whether the trial court erred in granting defendants' motion for partial summary judgment and motion in limine, thereby excluding evidence of defendants' alleged misrepresentations;
>
> 2. Whether the trial court erred in granting defendants' motion in limine and excluding evidence pertaining to the standard of care for real estate brokers or defendants' conduct as real estate brokers;
>
> 3. Whether the trial court erred in instructing the jury on comparative fault; and
>
> 4. Whether the trial court erred in its jury charge regarding the exercise of professional auctioneer discretion.

## III.

We first address the trial court's grant of partial summary judgment for defendants on the claims based on misrepresentation. We review a trial court's order granting summary judgment de novo with no presumption of correctness. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). A party is entitled to summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04.

The trial court correctly observed that it was duty bound, by the "law of the case" doctrine, to follow and apply this Court's disposition of the issues presented in *Land I*. *See Gray's Disposal Co. v. Metro. Gov't of Nashville*, 318 S.W.3d 342, 348 (Tenn. 2010); *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998). In *Land I*, we stated the following:

> As the trial court correctly noted, *it is clear that Plaintiffs were aware of every alleged misrepresentation prior to closing on the real estate contract*. By that time, Plaintiffs knew of the Defendants' ownership interest in the property; that the two acres depicted in the advertising brochure were not included in the sale; that the property had been voluntarily placed for sale by auction, and not as a result of financial distress on the sellers' part as conceivably suggested by the brochure; and that the assertion, earlier made, that a portion of the property along a boundary line had been sold to the State of Tennessee for the purpose of constructing a hiking trail was untrue.
>
> *Armed with this knowledge, Plaintiffs chose to close on the contract anyway*, almost immediately after filing the complaint in this case. In *Winstead v. First Tennessee Bank N.A., Memphis*, 709 S.W.2d 627 (Tenn. Ct. App. 1986), this [C]ourt stated as follows:
>
>> If one who is in possession of all material facts, either actually or constructively, proceeds with a purchase of realty, notwithstanding such knowledge, such a person cannot thereafter recover on the basis of fraud, misrepresentation, or concealment of the information to which all parties had equal access.
>
> *Winstead*, 709 S.W.2d at 633. We are of the opinion that this principle applies *to preclude Plaintiffs from seeking recovery based on the misrepresentations alleged in the complaint*, and we affirm the trial court's ruling in this regard.

*Land I*, 2005 WL 1618743 at *4 (emphasis added).

Plaintiffs, while recognizing that this Court "dismissed their separate claim for the stand-alone tort of misrepresentation," argue that "[defendants] [b]y not affirmatively disclosing that they were the owners of the property they were auctioning, by not acting honestly and in good faith, and by engaging in self-dealing by auctioning their own property without both disclosing their interests and obtaining the written consent of all parties to that self-dealing, [they] violated Tennessee Code Annotated § 62-13-403."[1] Plaintiffs argue that these alleged violations establish negligence per se by defendants. However, even assuming, without deciding, that the plaintiffs' negligence per se argument has merit, their claim would still fail because it is based on misrepresentations and failure to disclose that cannot be the cause of plaintiffs' alleged injury. We made this point clear in dismissing plaintiffs' TCPA claim in *Land I*, stating:

> Plaintiffs' cause of action under the [TCPA] must similarly fail, because, among other reasons, it rests on the same allegations of misrepresentation. The Act provides that "[a]ny person who suffers an ascertainable loss . . . *as a result of* the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover damages." Tenn. Code Ann. § 47-18-109(a)(1) [emphasis added]. The phrase "as a result of" requires a showing by a plaintiff that the alleged violations caused his or her injury. Under the circumstances of this case, *where Plaintiffs voluntarily elected to close on the contract for sale of the property with full knowledge of the alleged misrepresentations and of the truth regarding the property,*

---

[1]Tenn. Code. Ann. § 62-13-403(2009) provides, in pertinent part, as follows:

A licensee who provides real estate services in a real estate transaction shall owe all parties to the transaction the following duties . . .
(1) Diligently exercise reasonable skill and care in providing services to all parties to the transaction;
(2) Disclose to each party to the transaction any adverse facts of which the licensee has actual notice or knowledge;
        \*      \*      \*
(4) Provide services to each party to the transaction with honesty and good faith;
        \*      \*      \*
(7)(A) Not engage in self-dealing nor act on behalf of licensee's immediate family or on behalf of any other individual, organization or business entity in which the licensee has a personal interest without prior disclosure of the interest and the timely written consent of all parties to the transaction[.]

*Plaintiffs cannot show the required causative link between the misrepresentations and their alleged injury.*

***Land I***, 2005 WL 1618743 at *4 (first italics in original; second italics added). We hold that the trial court did not err in granting defendants partial summary judgment based on its application of the law of the case as established in ***Land I***. It follows that the trial court correctly granted defendants' motion in limine to exclude evidence of alleged misrepresentations by defendants prior to the auction.

IV.

Plaintiffs argue that the trial court erred in granting defendants' motion in limine to exclude evidence pertaining to the standard of care for real estate brokers or defendants' conduct as real estate brokers. "Generally, the admissibility of evidence is within the sound discretion of the trial court." ***Mercer v. Vanderbilt Univ.***, 134 S.W.3d 121, 131 (Tenn. 2004). "When arriving at a determination to admit or exclude even that evidence which is considered relevant trial courts are generally accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion." ***Otis v. Cambridge Mut. Fire Ins. Co.***, 850 S.W.2d 439, 442 (Tenn. 1992).

In ***Land I***, we clearly delineated the scope of the issue remanded to the trial court:

> Plaintiffs argue that the essence of their complaint is that the Defendants, by announcing the two-minute rule and not following it in an attempt to solicit a higher bid by another bidder, violated the applicable standard of care for auctioneers and real estate brokers. Plaintiffs assert that they are not attempting to enforce a contract at the lower bid level of $1.4 million, but instead alleging that *but for* the tortious misconduct of Defendants, a contract for that amount would have been created, and they would have been able to purchase the property for a lesser amount.
>
> *       *       *
>
> A real estate broker who breaches the duty to act honestly and in good faith, and with reasonable skill and care, is potentially liable to a party injured by such a breach. Similarly, an auctioneer whose conduct falls below the applicable standard of

care for his or her profession is liable to a party injured by the breach of duty.

*     *     *

Plaintiffs make only one negligence allegation that bears any logical relation to the damages which Plaintiffs seek – i.e., the differential between the two bids and corresponding buyer's premiums. This is the allegation that Defendants violated the applicable standard of care by failing "to conduct the auction in accordance with the express terms of the auction, specifically violating the two-minute rule for the submission of bids." If Defendants violated the two-minute rule in the manner described by Plaintiffs, an assertion which Defendants vigorously deny, Plaintiffs conceivably could assert this violation resulted in denying them the benefit of the bargain based on their lower bid of $1.4 million.

*Land I*, 2005 WL 1618743 at *5-6 (internal citations omitted; italics in original). Thus, the issue sent back for the jury was plaintiffs' claim that defendants violated the applicable standard of care by failing to conduct the auction in accordance with the express terms of the auction, specifically violating the two-minute rule for the submission of bids.

Following our remand, plaintiffs identified one expert they would call regarding the applicable standard of care and whether defendants breached it – William Stephenson, the owner of Stephenson Realty and Auction Company. Mr. Stephenson testified as follows in his deposition:

Q: Mr. Stephenson, one thing I want to get clear on, you've referenced in this response the applicable standard of care that auctioneers and Realtors should utilize. And I want to be clear about the capacities in which the defendants, these gentlemen, who were acting in the capacity of Realtors versus auctioneers. And are you saying in your response to Interrogatory Number A that they were acting as Realtors and auctioneers or just auctioneers or –

A: No.

Q: Can you clarify that?

-10-

A: As auctioneers only. I know in Tennessee, in order to auction real property, you have to also have your real estate license. But when it is sold at auction, you are under the confines of the auctioneer statute.

Q: Just so I'm clear. You're not rendering any opinions as to the defendants in regard to their conduct as licensed Realtors, but rather their capacity as auctioneers?

A: Correct.

* * *

Q: So, I mean, really, just to put it very simply, this is an auctioneer negligence case. It's not a realty negligence case. Is that a fair characterization?

A: Yes.

Plaintiffs presented no expert testimony on the applicable standard of care for real estate brokers. As seen by the quote above, plaintiffs' sole expert declined to testify that defendants' actions in conducting the auction implicated or violated the standard of care for real estate brokers. Moreover, it is apparent that all of the claims for professional real estate broker negligence, as opposed to auctioneer negligence, are based upon the same allegations of misrepresentation and failure to disclose that were dismissed in *Land I*. We hold that the trial court did not err in granting defendants' motion in limine to exclude evidence regarding the standard of care for real estate brokers or defendants' conduct as real estate brokers.

V.

Plaintiffs next argue that the trial court erred in instructing the jury on comparative fault. The trial court included a comparative fault instruction in the jury charge in accordance with the defendants' allegation that plaintiffs failed to act as reasonable purchasers of real estate by proceeding to closing without raising their objections to the manner in which the auction sale was conducted. Plaintiffs take no issue with the substance of the jury instruction, but argue that the Supreme Court's opinion in *Mercer*, 134 S.W.3d 121 (Tenn. 2004), should be construed as holding that "comparative fault is not to be considered in a professional negligence case." Defendants respond that *Mercer*'s holding "that fault may not be assessed *against a patient in a medical malpractice action* in which a patient's negligent conduct provides only the occasion for the medical attention, care, or

-11-

treatment which is the basis for the action," *id.* at 125 (emphasis added), should not be extrapolated beyond the medical malpractice context to apply to all professional negligence actions.

We need not reach the issue of *Mercer*'s applicability in this case because, even assuming *arguendo* that the trial court erred in instructing the jury on comparative fault, it would not have been reversible error. Reversal for error in a jury instruction "is only warranted . . . if the trial court's error 'more probably than not affected the judgment or would result in prejudice to the judicial process.' " *Troup v. Fischer Steel Corp.*, 236 S.W.3d 143, 149 (Tenn. 2007) (quoting Tenn. R. App. P. 36(b)). The verdict form asked the jury to answer the question "[d]o you find that the Defendants were at fault in this matter," and they answered "No." If the jury had answered "Yes," they were further instructed to answer whether the plaintiffs were at fault, and to assign percentage of fault. Because the jury found no fault on the part of defendants, they did not reach the comparative fault analysis. Consequently, the comparative fault instruction did not affect the judgment or prejudice the judicial process, and thus even if it had been error, it would not constitute a ground for reversal.

VI.

Finally, plaintiffs argue that the trial court erred in instructing the jury regarding the exercise of professional auctioneer discretion. The trial court's jury instruction states, in pertinent part, that "[p]rofessionals, such as auctioneers, are allowed reasonable discretion in the performance of their duties. Auctioneers have discretion in the conduct of the sale and acceptance of bids." Plaintiffs' auctioneering expert, Mr. Stephenson, testified at trial as follows on this point:

> Q: Now, you would agree, sir, that the auctioneer is in total and complete control of the auction; correct?
>
> A: Yes, sir.
>
> Q: The auctioneer has discretion to make various decisions on how the auction is to be conducted, correct?
>
> A: Yes, sir.
>
> Q: He determines when the auction starts and ends, right?
>
> A: Yes, sir.

-12-

\* \* \*

Q: Now, the goal of an auction is to get the highest price for the property, is it not?

A: Yes.

Q: Okay. Now, and you have the discretion to allow a bidder more time to bid, do you not?

A: Yes, you do.

\* \* \*

Q: Mr. Glascock had discretion knowing what he knew about Mr. Card, knowing what he knew about his financial wherewithal and whether he was a legitimate bidder or not, he had the discretion whether or not to allow more time to bid; correct?

A: He did.

Q: And so, really, what we're here about today is whether Mr. Glascock and Mr. Dixon properly exercised their discretion; correct?

A: Yes.

Defendants presented the testimony of two other auction experts who testified similarly to plaintiffs' expert regarding auctioneer discretion in conducting an auction sale. Plaintiffs have cited no legal authority suggesting that the trial court's instruction was erroneous as a matter of law. *See generally* 7 Am. Jur. 2d ***Auctions and Auctioneers*** § 32 ("An auctioneer is possessed of a large measure of discretion in the conduct of the sale and the acceptance of bids"). We hold the trial court did not err in its jury instruction regarding auctioneer discretion.

## VII.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellants, Spencer D. Land and Action Building and Development, LLC. This case is remanded to the trial court for collection of costs below, pursuant to applicable law.


_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE