# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 10, 2016 Session

## JAMES R. HAYNES, III, ET AL. v. LESLIE E. LUNSFORD, ET AL.

### Appeal from the Circuit Court for Sevier County
No. 2011-0358-II    Richard R. Vance, Judge
_____

### No. E2015-01686-COA-R3-CV-FILED-FEBRUARY 2, 2017
_____

Purchasers of real estate brought suit against the seller as well as the real estate agent and agency that assisted the buyers, alleging, inter alia, fraudulent misrepresentation, breach of duty to disclose adverse facts related to the purchased property, and violations of the Tennessee Consumer Protection Act. The buyers argued that the defendants misrepresented the age and history of the home and did not disclose that it had a mold problem. Upon motion for summary judgment, the agent and the agency were dismissed as defendants. The trial court subsequently denied the buyers' motion to reconsider the summary judgment order. The buyers appeal. Finding no error, we affirm.

### Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Alex R. Hirschfield, Birmingham, Alabama, and Scott Hall, Sevierville, Tennessee, for the appellants, James R. Haynes, III, and Sharon Hirschfield.

Jon G. Roach and Courtney E. Read, Knoxville, Tennessee, for the appellees, Lynn Chalache and Four Seasons Realty, Inc.

## OPINION

## I. BACKGROUND

This case arises out of the purchase and sale of a cabin at 1431 North Arbon Lane ("the Cabin") in Gatlinburg, Tennessee, by the plaintiffs, James R. Haynes, III ("Haynes") and Sharon Hirschfield ("Hirschfield") (collectively, "Buyers"), from

defendant Leslie Lunsford ("Seller").[1]  Hirschfield planned to live at the Cabin; Haynes, her ex-husband, funded the purchase of the home.

The initial ownership of the property at issue, lots 51 and 52, was in Chalet Properties, Inc.  In 1969, the property was conveyed to Joseph Ridolfo and his wife, Cleone S. Ridolfo.  In 2002, Mrs. Ridolfo, then a widow, sold the property to Harry V. Wilhite, Jr., and his wife, Karen M. Wilhite.  The Wilhites lost the property in a foreclosure in approximately 2005, at which time it was purchased by American Home Bank ("Bank").  Seller procured the property from Bank in 2006.

Defendant Lynn Chalache ("Chalache"), a licensed affiliate broker working at Century 21 Four Seasons Realty ("Century 21"), was contacted by Hirschfield around Thanksgiving 2009 to look at different properties in the Gatlinburg area.  Hirschfield first learned about the Cabin while looking at Multiple Listing Service ("MLS") descriptions online with Chalache.  David Dixon, the listing agent for the Cabin, had prepared the MLS description and the advertising flyer concerning the home.  According to Chalache, she acted as a facilitator, providing all the information in the MLS to Hirschfield, and thereby relying on the listing agent and Seller to provide accurate information about the home.  Upon visiting the Cabin with Chalache, Hirschfield observed that it looked new and it "smelled great."[2]

Buyers ultimately entered into a contract to purchase the Cabin on April 30, 2010.  A home inspection was performed prior to Buyers' closing.  Buyers contend that they reviewed the report carefully and became aware of the inspector's comments, such as those concerning the interior and exterior walls:

> Common cracks* Cracks and deterioration common to log construction noted; maintain caulking/chinking at log joints and corners. Opening cut into top log near where covered area of deck ends; uncertain reason. (??)

Buyers did not ask for repairs, although the asterisk meant "This item or component warrants attention, repair or monitoring."  Further, Hirschfield did not take any action to make sure the basement was moisture free.[3]  Significantly, the inspection report made no mention of mold.

---

[1] Seller's wife, Aronda Lunsford, was also named as a defendant.

[2] Interestingly, Hirschfield is a former Alabama real estate agent.  After attending real estate school and obtaining her real estate license in 1991, she held an active real estate license for ten years and worked in real estate for five years.

[3] The inspection report specifically noted, inter alia, cracks in the walls, carpenter bee holes, gaps in the trim, signs of poor drainage, foundation and roof issues, and floors that were not level.

According to Hirschfield, she believed that "everything was disclosed that was wrong with the house. I asked questions. The house was inspected. We knew what the inspector's report said and we were in agreement at that point of what the knowledge was that we had about the house to purchase it." A.L. Adams, a friend, also looked through the Cabin and reported positively. Buyers admit that there was no indication of moisture or mold in the Cabin at the time they purchased it.[4]

After closing on the Cabin, Hirschfield moved in on June 28, 2010. Approximately five months later, but prior to Thanksgiving 2010, Buyers began smelling a mildew type odor. To address her concerns about the smell, Hirschfield first contacted a local environmental inspector, Jim Evans, who in December 2010 found moisture in the wall next to the porch and the master bedroom. Around June/July 2011, another inspector, Sean Fogarty, found dead mold spores from samples taken from the tops of the kitchen cabinets and ceiling fans. Michael Pugliesi, a certified mold inspector, later identified long term water damage to the walls and found mold growth on the joists under the Cabin, on door facings and walls in the basement, and in the living room.

In late June 2011, Buyers filed their original complaint alleging misrepresentation/non-disclosure and simple negligence. The initial complaint only addressed the mold issue. Buyers later added a claim for violation of the Tennessee Consumer Protection Act ("TCPA"). Among their contentions, Buyers argued that Chalache failed to exercise reasonable skill and care required of realtors pursuant to Tennessee Code Annotated sections 62-13-102(2), 66-5-206, and 62-13-403.[5] They further asserted that the Cabin was presented to them as "new" and "just recently built." According to Buyers, subsequent to their purchase of the home, they discovered that it was not new, had not just recently been built, had been previously involved in a foreclosure sale, and contained mold. Specifically, Buyers argued that the Cabin "had a moisture and mold problem about which the Defendants knew or should have known." The amended complaint provided that "[d]efendants had a duty to disclose the moisture and mold problems to Plaintiffs and failed to do so." Buyers timely filed suit within a year of their purchase against the numerous defendants.[6]

According to Chalache, she was not aware of the existence of the Cabin prior to showing it to Hirschfield. Her impression of the home when they toured it was that it appeared to be new in that "it smelled great. It looked very shiny on the inside . . . it

---

[4] Although Buyers originally planned to purchase the Cabin together, only Haynes and Seller entered into the final agreement.

[5] The Tennessee Real Estate Broker License Act of 1973 enumerates a licensee's duties. *See* Tenn. Code Ann. § 62-13-403.

[6] In addition to the Lunsfords, Chalache, and Century 21, Buyers sued Gatlinburg Real Estate, LLC d/b/a Gatlinburg Real Estate and Rentals (the listing broker).

looked very nice." Neither Chalache nor Hirschfield noticed any mold in the Cabin when they walked through it, and Chalache did not become aware of any information prior to closing that would have indicated a mold issue with the home. Chalache asserted that if she had become aware of any mold in the Cabin, she would have disclosed that information to Buyers.

Buyers further claimed that Chalache "received notice that the Home was previously involved in a foreclosure and . . . was built four (4) to five (five) years or more prior to the date Buyers purchased the Home." Chalache testified that she only looked at the Seller's warranty deed to ascertain if both lots were on one deed, as the appraisal had revealed that the Cabin sat on two lots instead of merely one. Upon reviewing the deed at the hearing, she acknowledged the fact that Bank was the grantor perhaps meant that the property had been in foreclosure. She did not testify, however, that a foreclosure would definitively be an adverse fact. Rather, Chalache acknowledged that a prior foreclosure, the year built, and the age of a home could have a negative impact on the value of a property.

Chalache e-mailed Seller's warranty deed to Hirschfield prior to the closing. Accordingly, Buyers had been provided the same information known to Chalache: the MLS listing, the CRS Property Report,[7] Seller's disclosures, Buyers' home inspection report, and Seller's warranty deed. Additionally, Hirschfield acknowledged that she received and read a copy of the title search report for the Cabin. Further, Haynes received a copy of the appraisal for the Cabin and Hirschfield reviewed his copy. These documents revealed the history and value of the Cabin and apparently raised no issues for Buyers.

On July 28, 2014, Chalache and Century 21 filed their motion for summary judgment. Following a hearing on October 31, 2014, the trial court entered an order on November 21, 2014 granting the motion. The court found that there were no genuine issues of material fact concerning the following:

> 1. The critical issue in this lawsuit is the mold found at the Plaintiffs' cabin at 1431 N. Arbon Lane.
>
> 2. There is no evidence whatsoever that Defendants Lynn Chalache and Century 21 were aware of mold being present in this house.
>
> 3. Ms. Chalache provided everything she knew about the cabin.

---

[7] We derive from the record that this is a county retrieval property report.

4. There is no proof that Ms. Chalache had knowledge of mold or concealed mold from the Plaintiffs.

5. There is no proof that the condition of the house itself would put anyone on notice that there was mold in the house.

6. An independent home inspector conducted an inspection of the house and furnished a report.

7. This report was provided to the buyers and there was no mention of mold in that report.

8. The Plaintiffs had the same information that Ms. Chalache and Century 21 had about the home.

The court further concluded that Chalache and Century 21 had disclosed "everything about the cabin that could negatively impact its sales price and its condition. . . . [T]here is no proof in the record that the condition of the house would put anyone on notice that there was mold. There is no evidence of deception, fraud, or willful concealment of any condition. . . ."

On December 19, 2014, Buyers filed a motion to reconsider. Eight months later, the trial court entered an order denying Buyers' motion and affirming its prior final judgment. Buyers filed a timely notice of appeal.

## II. ISSUES

The issues presented for our review are restated as follows:

1. Whether new evidence presented by Buyers for the first time with their filing of their "Motion to Reconsider" should be considered for purposes of summary judgment.

2. Whether genuine issues of material fact exist as to whether Chalache violated the Tennessee Residential Property Disclosure Act, Tennessee Code Annotated sections 66-5-201, et seq. and the Tennessee Real Estate Broker License Act, section 62-13-101 et seq.

3. Whether the trial court erred in finding Hirschfield

knew or should have known of facts concerning the age and history of the cabin.

4. Whether genuine issues of material fact exist that Chalache negligently or intentionally misrepresented information to Buyers concerning the cabin.

5. Whether genuine issues of material fact exist as to whether Chalache and Century 21 violated the Tennessee Consumer Protection Act.

## III. STANDARD OF REVIEW

We review the trial court's findings of fact de novo on the record, with a presumption of correctness unless the evidence presponderates otherwise. Tenn. R. App. P. 13(d). We afford great deference to the trial court's determinations on the credibility of witnesses. *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011). We review the trial court's conclusions on matters of law de novo, with no presumption of correctness. Tenn. R. App. P. 13(d). Likewise, our review of the trial court's application of the law to the facts is de novo, with no presumption of correctness. *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011).

As noted in *Rye v. Women's Care Center of Memphis*, 477 S.W.3d 235, 264 (Tenn. 2015), the "moving party is entitled to summary judgment only if the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Rye*, 477 S.W.3d at 250.

As summarized in *Rye*:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

477 S.W.3d at 264. To defeat a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of its pleading, but must respond, and

by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' *at the summary judgment stage* showing that there is a genuine issue for trial." *Id.* at 265 (internal citations omitted). As noted by our Supreme Court, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Rye*, 477 S.W.3d at 265.

The Tennessee Rules of Civil Procedure do not authorize motions to reconsider; such motions are often deemed by courts as motions to alter or amend the judgment pursuant to Rule 59.04. *See U.S. Bank, N.A v. Tennessee Farmers Mut. Ins. Co.*, 410 S.W.3d 820, 826 (Tenn. Ct. App. 2012); *Tennessee Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998). "We review a trial court's denial of a [Rule] 59.04 motion to alter or amend a judgment for abuse of discretion." *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003)(citing *Bradley v. McLeod*, 984 S.W.2d 929, 932 (Tenn. Ct. App. 1998).

### a. "New" Evidence

At the time of the filing of their Rule 59.04 motion, Buyers submitted the affidavits of Hirschfield; Kim Kennedy, a former real estate agent who lived near the Cabin; and Mike Oakley, a building inspector for the City of Gatlinburg. Buyers also presented deposition testimony from Jim Little, Seller's insurance agent. Such evidence was not submitted prior to the hearing for summary judgment.

Kennedy lived at 1440 North Arbon Lane from 2000 to 2012 and frequently passed by the home at issue. She testified that during the period from 2004 to 2007, the Cabin had been left vacant without doors, windows, a deck, or a roof. According to Kennedy, it was exposed to the weather, and "birds, branches, and leaves enter[ed] the interior of the home." She stated that it was "common knowledge" that the Cabin had been involved in a foreclosure.

By affidavit dated November 30, 2011, Oakley related his observation that the Cabin had been pressure washed, sanded, and sprayed with a substance on its interior and exterior in 2007. He recalled a strong bleach smell coming from the home and noticed its lack of doors and a porch, along with roof issues. These observations by Oakley were previously described by counsel for Buyers in a May 18, 2012 letter. Thus, Buyers had this information in their possession well before Chalache and Century 21 filed their summary judgment motion.

Little, a State Farm agent, worked with Seller in obtaining an insurance policy on

the Cabin. According to Little, the contractor working on the Cabin was occupying it prior to its sale.[8]

Hirschfield contended in her deposition that Chalache should be held liable to Buyers "[b]ecause the cabin sat there for years without a roof and vacant and run down and unfinished and [Chalache] was a realtor in the area, her office is only a few blocks from there, and I'm sure she was in that area off and on showing houses." Hirschfield asserted that the "history of that cabin was not even disclosed . . . how it came to be and the previous person that owned the property becoming ill and dying, and the foreclosure was never disclosed . . . ." She claimed to later find out "that the cabin had slid off the foundation three times."

When additional evidence has been submitted with a Rule 59.04 motion, the court should consider "the moving party's effort to obtain the evidence in responding to the summary judgment; the importance of the new evidence to the moving party's case; the moving party's explanation for failing to offer the evidence in responding to the summary judgment; the unfair prejudice to the non-moving party; and any other relevant consideration." *Whalum v. Marshall*, 224 S.W.3d 169, 177 (Tenn. Ct. App. 2006) (citing *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003)). In considering these factors when new evidence has been submitted, the two most important factors are: 1) "the Plaintiffs' efforts to obtain the evidence to respond initially to the summary judgment motion" and 2) "the Plaintiffs' explanation for the failure to offer the newly submitted evidence in their initial response to the summary judgment motion." *Chambliss v. Stohler*, 124 S.W.3d 116, 121 (Tenn. Ct. App. 2003),

The trial court correctly ruled that none of the "new" evidence submitted by Buyers was truly new as "[a]ll the proposed affidavits were things that were known to the parties or known at the time we had the earlier hearing. It could have been provided then." The evidence outlined above was clearly available at the time Buyers filed their response to the summary judgment motion. Allowing its use would result in unfair prejudice to the defendants. *See Kirk v. Kirk*, 447 S.W.3d 861, 869 (Tenn. Ct. App. 2013) (to prevail on a Rule 59.04 motion "based on newly discovered evidence, it must be shown that the new evidence was not known to the moving party . . . and it could not have been known to him through the exercise of reasonable diligence") (internal citations omitted); *Robinson v. Currey*, 153 S.W.3d 32, 39 (Tenn. Ct. App. 2004) (affirming trial court's denial of motion to alter or amend based on new additional evidence as the plaintiffs made no showing of due diligence and offered no explanation as to why the newly submitted affidavits could not have been submitted in their initial response to the summary judgment motion).

---

[8] The contractor, Mr. Lee, testified that he never stayed in the Cabin.

## b. Adverse Facts

The Tennessee Residential Property Disclosure Act requires the seller of residential property to furnish a residential property disclosure statement to a purchaser regarding the condition of the property, including any material defects known to the seller. Tenn. Code Ann. § 66-5-202(1). The form must contain notice that the information contained in the disclosure statement constitutes the representations of the seller and not the real estate licensee. *Id.* With regard to duties of a real estate licensee, the Act requires the licensee to inform buyers or sellers whom they represent of their rights and obligations under the Act. The Act provides:

> If a real estate licensee performs those duties [to inform], the licensee shall have no further duties to the parties to a residential real estate transaction under this part, and shall not be liable to any party to a residential real estate transaction for a violation of this part or for any failure to disclose any information regarding any real property subject to this part. However, a cause of action for damages or equitable remedies may be brought against a real estate licensee for intentionally misrepresenting or defrauding a purchaser. A real estate licensee will further be subject to a cause of action for damages or equitable relief for failing to disclose adverse facts of which the licensee has actual knowledge or notice. "Adverse facts" means conditions or occurrences generally recognized by competent licensees that significantly reduce the structural integrity of improvements to real property, or present a significant health risk to occupants of the property.

Tenn. Code Ann. § 66-5-206. Another section of the Act reiterates that the representations made in the disclosure statement are not that of the real estate licensee, stating, "A real estate licensee may not be the subject of any action and no action may be instituted against a real estate licensee for any information contained in the [disclosure form], unless the real estate licensee is signatory to such." Tenn. Code Ann. § 66-5-208(d)(1). The subsection goes on to provide: "Nothing in this subsection (d) shall be construed to exempt or excuse a real estate licensee from making any of the disclosures required by § 62-13-403, § 62-13-405 or § 66-5-206, nor shall it be construed to remove, limit or otherwise affect any remedy provided by law for such a failure to disclose." Tenn. Code Ann. § 66-5-208(d)(2).

One of those referenced statutes, § 62-13-403, is found within the Tennessee Real Estate Broker License Act of 1973, which provides:

> A licensee who provides real estate services in a real estate

transaction shall owe all parties to the transaction the following duties, except as provided otherwise by § 62-13-405, in addition to other duties specifically set forth in this chapter or the rules of the commission:

. . .

(2) Disclose to each party to the transaction any adverse facts of which the licensee has actual notice or knowledge[.]

§ 62-13-102(2). For purposes of the Real Estate Broker License Act, "adverse facts" are defined as "conditions or occurrences generally recognized by competent licensees that have negative impact on the value of the real estate, significantly reduce the structural integrity of improvements to real property or present a significant health risk to occupants of the property[.]" *Id.*; *see Konop v. Henry*, No. M2010-00037-COA-R3-CV, 2010 WL 3269988, at *4 n.8 (Tenn. Ct. App. Aug. 18, 2010). There is a duty under both Acts to disclose "adverse facts" of which the licensee has actual knowledge or notice. Tenn. Code Ann. § 62-13-403, § 66-5-206. However, the definition of adverse facts found in the Real Estate Broker License Act of 1973 also contains a third prong, for conditions or occurrences that "have negative impact on the value of the real estate." Tenn. Code Ann. § 62-13-102(2). Under the facts of this case, Buyers generally allege that these defendants "breached their duty owed to the Plaintiffs by failing to disclose all material facts as to the actual condition of the home" – they did not mention either the Real Estate Broker License Act or the Tennessee Residential Property Disclosure Act in their complaint. As such, the more comprehensive definition of "adverse facts" found in Tennessee Code Annotated section 62-13-102(2) applies.

Buyers argue that Chalache knew or should have known that the Cabin was not just "recently built" or "new." They assert that she failed to tell them of the actual age of the Cabin, failed to exercise reasonable care in obtaining information concerning the home, and misadvised them of material facts relating to the Cabin. Buyers contend that they justifiably relied upon the information provided by Chalache.

Again, even though Chalache testified that the warranty deed transferring the property from Bank to Seller could have meant the property had been involved in a foreclosure, this same information had been provided to Buyers. Moreover, information as to the history and value of the Cabin and the property on which it is located was located in the title report and bank appraisal received and reviewed by Buyers. As such, Buyers had the same information as Chalache on this issue.

Buyers further argue that exposure to the elements would be an adverse fact under Tennessee law. Regardless of whether the Cabin's exposure constitutes an adverse fact, nothing in the record creates a genuine issue of material fact as to whether Chalache knew that the Cabin had been left vacant without a roof, doors, windows, or a deck from the period of 2004 to 2007 or otherwise exposed to the elements. What may be common

knowledge in a community does not demonstrate Chalache's actual notice or knowledge on this issue. *Konop*, 2010 WL 3269988, at *7. Buyers have not established that Chalache actually knew or had any information about this alleged adverse fact. Likewise, nothing in this record reveals that Chalache had any knowledge of the contractor occupying the home prior to its sale, that the Cabin had been treated with bleach, that a leak existed in the roof, or that moisture or mold was present in the home. The duties owed by real estate licensees do not require the agent "to undertake or provide an independent investigation or inspection of the property." Tenn. Code Ann. § 62-13-403 (quoting § 65-5-202). Chalache did not have knowledge of "adverse facts" within the meaning of the applicable statutes.

### c. Misrepresentation

To succeed in a cause of action for negligent misrepresentation:

> [T]he plaintiff must establish by a preponderance of the evidence that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied on the information.

*Morrison v. Allen*, 338 S.W.3d 417, 437 (Tenn. 2011). Negligent misrepresentation occurs when a defendant, acting in the course of her business, profession, or employment, or in a transaction in which she has a pecuniary interest, supplies faulty information meant to guide another in their business transaction; the defendant fails to exercise reasonable care in obtaining or communicating information; and the plaintiff justifiably relies upon the information provided by the defendant. *Robinson v. Omer*, 952 S.W.2d 423 (Tenn. 1997)(citing Restatement (Second) of Torts, § 552). "Justifiable reliance in this context is *not* blind faith." *McNeil v. Nofal*, 185 S.W.3d 402, 408 (Tenn. Ct. App. 2005).

A claim for intentional misrepresentation has the following six elements:

> (1) the plaintiff made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008).

Buyers claim that Chalache made representations to them that the Cabin was "new" or just "recently built." Additionally, Buyers again assert that Chalache failed to reveal the previously discussed adverse facts.

In *Winstead v. First Tennessee Bank N,A., Memphis*, 709 S.W. 2d 627, 633 (Tenn. Ct. App. 1986) the court held "if one who is in possession of material facts, either actually or constructively, proceeds with a purchase of realty, notwithstanding such knowledge, such a person cannot thereafter recover on the basis of fraud, misrepresentation, or concealment of the information to which all parties had equal access." A party "does not have a duty to disclose a material fact where ordinary diligence would have revealed the undisclosed fact." *Odom v. Oliver*, 310 S.W.3d 344 (Tenn. Ct. App. 2009)(citing *Simmons v. Evans*, 206 S.W.2d 295, 296 (Tenn. 1947)); *see Macon Cnty. Livestock Mkt., Inc. v. Kentucky State Bank, Inc.*, 724 S.W.2d 343, 351 (Tenn. Ct. App. 1986) ("A party cannot be permitted to claim that he has been taken advantage of if he had the means of acquiring the needed information . . . ."); *Daniels v. Basch*, No. M2004-01844-COA-R3-CV, 2005 WL 2860177, at *5 (Tenn. Ct. App. Oct. 27, 2005) (holding plaintiff knew of TVA powerlines and TVA easement on her property through survey that was provided to her such that she could not claim that the sellers and real estate agent misrepresented facts to her).

The information that Chalache had concerning the history, condition, and value of the Cabin and the property came through the MLS listing, the CRS Property Report, Seller's disclosures, bank appraisal, Buyers home inspection, and Seller's warranty deed -- all of which were provided to Buyers. Chalache neither listed the Cabin nor had any discussions with Seller or the listing agent concerning the condition of the Cabin. "[W]here the means of information are at hand and equally accessible to both parties so that, with ordinary prudence or diligence, they might rely on their own judgment, generally they must be presumed to have done so, or, if they have not informed themselves, they must abide the consequences of their own inattention and carelessness." *McNeil*, 185 S.W.3d at 409 (quoting 91 C.J.S. *Vendor and Purchaser* § 68, at 945-6). Buyers cannot maintain that Chalache misrepresented these facts to which they had the same access. *See Winstead*, 709 S.W.2d at 631. Any failure on their part to adequately review the materials provided is not the fault of Chalache and Century 21.

### d. Tennessee Consumer Protection Act

The Tennessee Consumer Protection Act (hereinafter "TCPA") forbids "unfair or deceptive acts or practices affecting the conduct of any trade or commerce," and allows a plaintiff to recover if the plaintiff proves by a preponderance of the evidence that "the defendant engaged in an unfair or deceptive act or practice declared unlawful by the

TCPA" and (2) that the defendant's conduct caused "an ascertainable loss of money or property . . . ." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005); *See* Tenn. Code Ann. § 47-18-104(b). The express purpose of the TCPA is to protect consumers from "unfair or deceptive business practices" in providing additional remedies by statute. *Id.*; *see* Tenn. Code Ann. § 47-18-102.

In *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997), the Tennessee Supreme Court observed that professional sellers of real property are obligated by the TCPA "to exercise good faith in disclosing to prospective purchasers material facts affecting the value of the property known to them and not known to or reasonably ascertainable by a prospective purchaser." *Id.*; *see also Staggs v. Sells*, 86 S.W.3d 219, 223 (Tenn. Ct. App. 2001)(noting that "'[b]efore a seller makes a representation, he is required to exercise reasonable care to make sure it is correct;")(quoting *Akbari v. Horn*, 641 S.W.2d 506, 508 (Tenn. Ct. App. 1982)).

The Act clearly covers the transfer of real property. In *Fayne v. Vincent*, 301 S.W.3d 162, 172 (Tenn. 2009), the Tennessee Supreme Court observed:

> Negligent misrepresentations may be found to be violations of the Act. A deceptive act or practice is, in essence, "a material representation, practice or omission likely to mislead . . . reasonable consumer[s]" to their detriment.

> In a transaction involving the sale of real property, the seller has a duty to disclose to the buyer material facts that affect the property's value and that are not known or reasonably discoverable by a purchaser exercising ordinary diligence.

*Id.* at 177 (citations omitted).

Specifically, Buyers have asserted in their amended complaint that Chalache and Century 21 engaged in "deceptive acts" unlawful pursuant to § 47-18-104(a) and violated the following provisions of the TCPA:

> 27. The Defendants have represented that the home was new, when it was not, in violation of Tenn. Code Ann.§ 47-18-104(b)(6).

> 28. The Defendants have represented that the home was of a particular standard, quality or grade, when it was not, in violation of Tenn. Code Ann. § 47-18-104(b)(7).

> 29. The Defendants have used statements in

- 13 -

advertisements which create a false impression of the quality or value of the home, in violation of Tenn. Code Ann. § 47-18-104(b)(21).

Buyers further alleged that the "[d]efendants willfully and knowingly concealed material facts that the house contained mold and that it was not new and just built."

As previously discussed, Buyers have not proven their claims of misrepresentation against these defendants. Thus, the evidence of record does not establish that Chalache violated her duty as a realtor or is liable under the TCPA for "unfair or deceptive acts or practices" proscribed by the Act. Tenn. Code Ann. § 47-18-104(a).

As there are no genuine issues of material fact and for the reasons stated herein, Chalache and Century 21 are entitled to summary judgment as a matter of law.

## V. CONCLUSION

We affirm the trial court's order denying Buyers' Rule 59.04 motion. The court did not abuse its discretion in denying the motion. We affirm the award of summary judgment to defendants Lynn Chalache and Century 21 Four Seasons Realty and remand the cause to the trial court. Costs of the appeal are assessed to James R. Haynes, III, and Sharon Hirschfield.

_____
JOHN W. MCCLARTY, JUDGE